MORRIS, Appellant, v. CITY OF BRITTON, Respondent

(279 N. W. 531)

(File No. 8084.   Opinion filed May 6, 1938.)

122

*Van Slyke & Agor*, of Aberdeen, and *W. H. Morgan*, of Britton, for Appellant.

*Harold W. King*, of Britton, for Respondent.

RUDOLPH, J. The defendant, City of Britton, maintains as a part of its sewerage system a so-called "sewer pool." This pool is approximately one-half mile east of the east city limits of the town and away from any traveled road. The pool is reached by driving east from the City of Britton on highway No. 10, then turning into a lane or trail that leads from the highway to the pool. The pool was apparently constructed by excavating the earth and piling it around the edges of the excavation, thereby forming the banks for this pool or pond. The exact size of the pool is not entirely clear from the evidence. One witness described it as comprising about 25 or 30 acres, while another witness said it was about 200 feet long and 150 feet wide. The banks around the pool are approximately 8 feet high, and these banks, together with the surrounding grounds, have been used as a dump ground for the City of Britton. On the banks and extending down to the pool "there was everything there in the line of rubbish, stoves, car bodies, manure, ashes." The water in the pool was dark and murky. One witness described it as "just like mud, you couldn't see through it." Around this pool and dump ground the city had constructed a fence of woven wire and barbed wire, and a gate was located where the lane leads in from the highway. However, according to the evidence, this gate was not kept closed, and the fence surrounding the pool and grounds was down in places and generally in a bad state of repair. Some years before the accident

hereinafter referred to, it became necessary for the City of Britton to deepen this sewer pool, and this was accomplished by running a ditch through the center of this pool. This ditch was constructed by using a dragline and excavating the earth from the center of the pool and piling it along the edges. This excavation or ditch in places came to within 10 feet of the banks, and was described in the evidence as being anywhere from 5 to 10 feet deep. The bottom of the pool was covered with a thick heavy mud and slime.

On the 29th day of May, 1934, two boys, each about 7 years of age, started across the country east of Britton for the purpose of trapping gophers. One of these boys was Eugene Morris. They went through that which is described in the evidence as "Bingham's pasture," and finally arrived in the vicinity of this sewer pool. Near the pool these boys set two traps. While there an animal, described by Eugene's companion as a rabbit, jumped out from among the debris and went into the water of this pool. Eugene Morris wanted to catch this rabbit and started out into the pool after it. In chasing this animal Eugene reached the deeper water caused by the excavation made in the pool and was drowned. This action is brought by the administrator of the estate of Eugene Morris, deceased, against the City of Britton to recover damages for the death of the boy. The trial court directed a verdict in favor of the defendant and plaintiff has appealed.

Appellant first attempts to predicate recovery upon the theory of the turntable or attractive nuisance cases. The theory of these cases is that a person who maintains on his premises some dangerous instrumentality attractive to children in such a location that he knows or should know children are or are likely to be attracted thereby, impliedly invites children to come onto his premises, and, when a child is attracted to the premises by such instrumentality, the owner is responsible for any injury resulting to the child from the dangerous instrumentality and caused by his negligence. However, recovery must be denied upon the theory of these cases because of the character of the pool, the fact that the child was not attracted to the spot by the pool, and the location of the pool. United Zinc & Chemical Co. v. Britt, 258 U. S. 268, 42 S. Ct. 299, 66 L.Ed. 615, 36 A. L. R. 28. Appellant next seeks to predicate a recovery upon a theory somewhat broader than the turntable or attractive nuisance cases. Appellant attempted and

offered to prove by various witnesses that children had been seen playing on the banks of this sewer pool and at the dump ground and wading in the pool. The purpose and object of this testimony was to establish knowledge on the part of the city that the children played along the banks and waded in the pool. The court rejected this testimony. It is appellant's contention that this testimony should have been admitted because appellant contends an owner of property is liable for injury to children trespassing thereon when it is known to him that they are accustomed to so trespass. The rule for which appellant contends finds expression in the Restatement of the Law of Torts, volume 2, § 339, as follows:

"A possessor of land is subject to liability for bodily harm to young children trespassing thereon caused by a structure or other artificial condition which he maintains upon the land, if

"(a) the place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass, and

"(b) the condition is one of which the possessor knows or should know and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm to such children, and

"(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it, and

"(d) the utility to the possessor of maintaining the condition is slight as compared to the risk to young children involved therein."

The offered evidence of knowledge on the part of the city that children played around the pool was, no doubt, to bring the facts of the case within the above-quoted subdivision (a) of the rule as it appears in the Restatement. The fact that the pool was located away from the traveled highway, that it was far outside the city limits, and in a comparatively isolated spot, would eliminate any implied knowledge of trespassing children on the part of the city, and hence the necessity for proving actual knowledge. We therefore believe this offered evidence was competent under appellant's theory of the case, and we will consider the evidence on the basis that the offered facts were established.

█ Courts have been extremely hesitant in extending this doctrine of liability to trespassing children to injuries occasioned

by ponds or pools of water. Ruling Case Law gives expression to the hesitancy, as follows: "Ponds, pools, lakes, streams, and other waters embody perils that are deemed to be obvious to children of the tenderest years; and as a general proposition no liability attaches to the proprietor by reason of death resulting therefrom to children who have come upon the land to bathe, skate, or play. * * * Although, a property owner may know of the habit of children to visit waters upon his premises, he is as a rule under no obligation to erect barriers or take other measures to prevent them being injured thereby." 20 R. C. L. 96.

See annotations in 36 A. L. R. 224; 53 A. L. R. 1355; 60 A. L. R. 1453.

From our study of the cases, it appears that this inclination to deny liability for injury to trespassing children occasioned by pools or ponds is based upon two considerations: First, because of practical considerations. Once a court decrees liability for injury occasioned to a child in an unguarded pool or pond, it would be difficult to place any practical limitation upon such liability. This rule finds good expression in the case of Thompson v. Illinois Central Railroad Co., 105 Miss. 636, 63 So. 185, 186, 47 L. R. A., N. S., 1101, wherein the court said: "Scattered over the length and breadth of the land are innumerable ponds and lakes, artificial and natural; and occasionally a boy or man loses his life while wading, or bathing, in such body of water. If, as a matter of law, the owners of fish ponds, mill ponds, gin ponds, and other artificial bodies, wherein it is possible that boys may be drowned, can be held guilty of actionable negligence unless they inclose or guard same, few will be able to maintain these utilities, and to our minds an intolerable condition will be created."

Second, liability is denied for the reason that the danger inherent in water when contained in a pond or pool is or should be obvious to a child, and such pond or pool does not, therefore, constitute "an unreasonable risk of death or serious bodily harm" to trespassing children. This reason, we believe, also finds expression in the Restatement in the comments to the rule above set out. In the comments to subsection (b) appearing on page 922 of the text, it is stated that this rule "does not extend to those conditions the existence of which is obvious even to children and the risk of

which is fully realized by them." So far as the facts in this case are concerned, we are content to base our decision upon this ground. Even to a 7 year old mind it must have been apparent that this filthy pool was not for the purpose of wading or bathing; nor was it attractive for this purpose. The deep part, under the most favorable construction of the evidence, was 10 or 11 feet from the banks, and the danger of venturing out more than 10 feet into the filth of this pool, which had banks 8 feet high thrown up around it, should have been obvious, we believe, even to children. Considering the nature of this pool, its location, and the conditions surrounding it, we do not believe it can be said that the city should have realized that it involved an unreasonable risk of death or serious bodily harm to trespassing children, even though the city knew children did occasionally trespass there. The situation is similar to what it would have been if Eugene had been walking along the right of way of a railroad, scared up a rabbit, and without a thought in his mind other than catching the rabbit, dashed upon the railroad track and was struck by an approaching train. The city could not be expected to anticipate Eugene's actions in chasing a rabbit out into the depth of this pool. Reddy v. City of Watertown, 53 S. D. 347, 220 N. W. 851.

Being of the opinion that the danger of venturing out into this sewer pool should have been apparent to the boy, it becomes unnecessary for us to consider cases cited by appellant which present a situation where a child is injured because of some concealed danger in the nature of a trap, and located on premises where children are accustomed to trespass. Cases involving the negligent maintenance of a swimming pool, Norberg v. Hagna, 46 S. D. 568, 195 N. W. 438, 29 A. L. R. 841; Glirbas v. Sioux Falls, 64 S. D. 45, 264 N. W. 196, have no application to the facts here presented.

The judgment and order appealed from are affirmed.

ROBERTS, P. J., and POLLEY and SMITH, JJ., concur.

WARREN, J., concurs specially.

WARREN, J. (concurring specially). In the determination of this appeal, it is necessary that we consider and answer two questions: Did the respondent city maintain an attractive nuisance in the form of this sewage disposal plant? Was the respondent

city guilty of negligence in constructing and maintaining this disposal plant, irrespective of the doctrine of attractive nuisance?

It is my opinion that the respondent in this action cannot be held liable on the theory that it has maintained an attractive nuisance. This state has adopted and approved the attractive nuisance doctrine on the basis that the child who is attracted and thereby injured has received an implied invitation and must be given the degree of care to which an invitee is entitled. Baxter v. Park, 44 S. D. 360, 184 N. W. 198. It logically follows that if the trespassing child is to achieve the status of an invitee, he must at some time receive an invitation, either express or implied. In other words, in applying the doctrine of attractive nuisance, one of the necessary elements is that the child was attracted to the danger, and thereby received an implied invitation. Thus it has been held that the dangerous instrumentality that caused the injury to the child must be the same thing which attracted (invited) him to the premises. See 36 A. L. R. 34, 136. In the instant case, an examination of the evidence offered by appellant clearly shows that the boy was not attracted (invited) to the place of his death by the dangerous instrumentality which caused his death, but that he came upon the premises for an entirely different reason. The thing which caused the death of appellant's son was the ditch or trench through the center of the pond. The boy did not come upon the premises to play in the pond, nor was he attracted (invited) by the pond. He came for the purpose of trapping gophers. Clearly, then, if he was not attracted to the premises, he received no implied invitation and cannot be classed as an invitee, and therefore the doctrine of attractive nuisance has no application to this case.

Was the respondent city guilty of negligence in constructing and maintaining this disposal plant, irrespective of the doctrine of attractive nuisance? This theory is much broader than the doctrine of attractive nuisance, and under it the property owner is held liable, regardless of whether the child received an implied invitation to come upon the premises or not. An excellent statement of this theory is found in Ramsay v. Tuthill Building Material Co., 295 Ill. 395, 129 N. E. 127, 129, 36 A. L. R. 23, and we quote: "There is no implied invitation from the mere existence of a dangerous attraction which is not discoverable off the premises; but, if to the knowledge of the owner children habitually come upon his

premises where a dangerous condition exists to which they are exposed, the duty to exercise care for their safety arises, not because of an implied invitation, but because of his knowledge of unconscious exposure to danger which the children do not realize."

It is my opinion that the respondent city cannot be held liable for negligence in the construction and operation of the disposal plant in the absence of any application of the attractive nuisance doctrine. This conclusion is largely influenced by the holding of the United States Supreme Court in United Zinc & Chemical Co. v. Britt et al., 258 U. S. 268, 42 S. Ct. 299, 66 L. Ed. 615, 36 A. L. R. 28. Generally speaking, the respondent city had the right to construct and maintain its disposal plant on its own property in any manner in which it desired. It is the contention of appellant that respondent's knowledge of the habitual presence of children near the disposal plant conditioned this right and created a duty upon the part of the respondent city to protect them from danger. With this contention I disagree, though I concede without in any manner so deciding, that appellant had the right to present evidence concerning respondent's knowledge of the habitual presence of children. I have shown that there can be no application of the attractive nuisance doctrine because appellant's son never achieved the status of invitee while on the property of respondent city. Having reached that conclusion, this case falls within the statements of Mr. Justice Holmes in United Zinc & Chemical Co. v. Britt et al., supra, wherein he says that property owners owe no special duty to infants who come upon their land without an invitation, either express or implied, and we quote: "Infants have no greater right to go upon other people's land than adults, and the mere fact that they are infants imposes no duty upon landowners to expect them and to prepare for their safety. * * * There can be no general duty on the part of a landowner to keep his land safe for children, or even free from hidden dangers, if he has not directly or by implication invited or licensed them to come there."

Further authorities on the question of the duty of property owners show this rule to be supported by a number of well-reasoned opinions, and I refer briefly to some of them.

In Carr v. Oregon-Washington R. & Nav. Co., 123 Or. 259, 261 P. 899, 904, 60 A. L. R. 1434, annotations at page 1445, the

court said: "The courts have well said that no one yet has been able to build a fence which a boy cannot surmount."

The court in Rallo et al. v. Heman Const. Co., 291 Mo. 221, 236 S. W. 632, considering the duty of defendant to fence or guard premises for the safety of strangers, young or old, who might go upon or about a pond for pleasure or curiosity, held that the defendant was not liable for the death of an 8 year old boy who drowned in an unguarded pond formed in an abandoned quarry, even though it had permitted children to play on the premises.

In St. Clair v. City of Macon, 43 Ga. App. 598, 159 S. E. 758, the court held that one who created or maintained a pond of water on private premises was under no duty to maintain it in a condition of safety, as against drowning, for children who, with the mere acquiescence and knowledge of the owners but without express or implied invitation, came upon the premises. It also pointed out that the doctrine of the turntable cases did not apply to such situations.

In Cox v. Alabama Water Co., 216 Ala. 35, 112 So. 352, 53 A. L. R. 1336, the court refused recovery against a landowner for the death of an 8 year old child by drowning in a pool which the landowner maintained on his premises, though defendant knew the neighborhood of the pool was frequented by school children. The pool was unfenced, and the court held that to render a landowner responsible for mere condition of his property, in absence of affirmative act calculated to inflict injury, an invitation to the person injured must be implied from conduct amounting to more than sufferance or passive acquiescence, in repeated trespasses.

That an owner of realty is not bound to maintain his property so that one wandering thereon, whether adult or child, cannot sustain injury, is the holding of the Pennsylvania Supreme Court in Selve v. Pilosi, 253 Pa. 571, 98 A. 723. The facts in that case show that a minor child, age 6, fell into a vault and was drowned. The vault was on the back part of a lot. The child's mother testified that she had told the defendant ten days before the accident that she feared her children at play might fall into it, and that he had told her that she should keep her children in the house.

Thompson v. Illinois Cent. R. R. Co., 105 Miss. 636, 63 So. 185, 187, 47 L. R. A., N. S., 1101, 1106, holds the owner not liable for the death of a boy drowned in an unguarded pond on

private property. A California case is cited therein in which the turntable doctrine is discussed. Peters v. Bowman, 115 Cal 345, 47 P. 113, 598, 56 Am. St. Rep. 106. It places the artificial pond on parity with natural ponds and streams. The quotation from the California case is as follows: "A pond cannot be rendered inaccessible to boys by any ordinary means. Certainly no ordinary fence around the lot upon which a pond is situated would answer the purpose; and therefore, to make it safe, it must either be filled or drained, or, in other words, destroyed."

See, also, the notes beginning at page 1101 of the above L. R. A. citation, on the doctrine of attractive nuisance.

In arriving at my conclusion, I have resorted to the following reasoning: If the infant who comes upon the property of another without invitation is old enough and mature enough to recognize and avoid the dangers existing thereon, then, clearly, the duty of the property owner towards such infant is that duty which is owed to an adult trespasser. However, the fact that the infant who comes upon the property of another without invitation is so young and immature as to be unable to recognize and avoid the dangers existing thereon, does not, in my opinion, create any special duty towards him on the part of the property owner. The property owner owes no general duty of care and protection to such an infant, and the act of the infant's trespass cannot shift the obligation for his care to the property owner. Such was the reasoning of the court in Eades v. American Cast-Iron Pipe Co., 208 Ala. 556, 94 So. 593, 594, when they said: "As for children so little advanced as to be unable to recognize the most patent dangers, their inefficiency cannot be allowed to shift the care of them from the parents to strangers, or to impose upon the owners of property a duty and liability where otherwise none would exist. This is the doctrine that we gather from the weight and reason of the authorities."

In conclusion I will state that the trial court was correct in directing a verdict for respondent, because the evidence presented by appellant clearly shows the lack of any invitation to appellant's son, express or implied, to come upon the property of respondent, and, in the absence of such an invitation, the respondent city owed him no duty of protection from hidden danger.

For the foregoing reasons, I concur that the judgment and order appealed from should be affirmed.