## True v. Shelton

January 19, 1951.

Ward Yager, Judge.

L. M. Ackman for appellant.

John M. Berry and L. T. Peniston for appellee.

JUDGE LATIMER—Reversing.

Appellant, a mail carrier, riding a saddle horse while carrying the mail out of the Truesville Post Office to the Beechwood Post Office in Owen County, was attacked by a jack which appellee kept for breeding purposes but which was permitted by appellee to be at large upon the highway over which appellant was riding. Both appellant and his horse were considerably injured.

The cause went to trial and at the conclusion of all the evidence, appellee's motion for a peremptory instruction was sustained. From that judgment this appeal is prosecuted.

Appellee apparently based his motion for peremptory instruction upon the proposition that, since there is no "local option" stock law enforced in that particular community, the owner of a domestic animal may lawfully permit the animal to run at large on a public highway and is not liable for the injuries it commits to the property and person of another, in the absence of statutory provision, unless it is affirmatively shown that the animal is vicious and that the owner has knowledge of that fact. Thus, we are confronted with the question as to whether or not the evidence, as introduced herein, is sufficient to show the jack to be a ferocious and dangerous animal and that same was within the scien-

ter of the owner. 2 Am. Jur., Animals, Section 11. See also 54 A. L. R. 89 and 33 A. L. R. 796.

Appellee says in brief that jacks are in the same category of domestic animals as all other species of livestock in Kentucky. It is true KRS 259.110, 259.160, and 259,170, direct the posting, taking up, and confinement of stray horses, mules, jacks or jennets, ungelded horses, or bulls known to be mischievous and breachy. It will be noticed, however, that the statutory provision relative to jacks, jennets, ungelded horses, mischievous and breachy bulls, and stray horses is more prescribed than that of other strays. This would indicate a recognition of the existence of some basic difference. However, we feel it unnecessary to go into a discussion of that phase of the matter since we are concerned with the law and the facts applicable to whether or not this particular jack was a vicious animal and its owner had knowledge of that viciousness. The law seems to be well established that, in order to hold the owner of a domestic animal liable, in the absence of statutory provision, it must be shown that the animal was vicious and that the owner or keeper had knowledge of that fact.

Much evidence was introduced to show that the jack was permitted to, and did, roam at large, much to the annoyance of the neighborhood generally.

In the very early case of Abshear v. Monday, 10 Ky. Op. 88, 9 Ky. Law Rep. 332, the rule was enunciated that the owner of a vicious horse is required so to confine the horse as to prevent it from injuring the stock of others. If the owner is not aware of the vicious habits of his horse, he is bound only to use such means as an ordinary prudent man would have used in order to have kept a horse of like temper within his own enclosure. If, on the other hand, the evidence shows that the horse was known by the owner to be dangerous, it was his duty to use extraordinary care to provide against injury to others.

It is said in Thompson on Negligence, Volume 1, Paragraph 849: ''The tendency of the modern law to assimilate the liability of the owner of domestic animals for injuries committed by them to negligence in all cases, without reference to proof of a knowledge of vicious propensity in such animals, is illustrated in a

large class of holdings, some of them ancient, which, however, relate chiefly to damages done by escaping horses, cattle, etc. The result of these holdings may be substantially stated to be that the liability of a keeper of horses, cattle, etc., for allowing them to escape upon the public streets, in case they there do damage to travelers or others lawfully upon the streets, does not rest upon any conception as to his knowledge or ignorance in respect of the vicious character of the animals, but rests upon the question whether the keeper was guilty of negligence in permitting them to escape. And here the same rule in regard to what is and what is not negligence obtains as in most other situations. * * * The degree of care which the law requires depends upon the circumstances of each case.''

True, there must be a reasonably close, casual connection between the negligence and the injury claimed. The first simple fact we meet is that the jack was on the highway. The evidence herein, as established by numerous witnesses, is that this jack was frequently loose and unattended on the highway and on the premises of neighbors. This fact was well known to its owner. But, since it is claimed that there is no ''local option'' stock law enforced in that community, we are, consequently, thrown into that realm where such a condition must exist as would require extraordinary care upon the part of the owner. We are, therefore, confronted with the question as to whether or not the evidence is sufficient here to charge the owner with knowledge that this jack possessed a capricious disposition, or knew something of the vicious and mischief propensities of the jack so as to make it dangerous to be loose and unattended on the highway, or whether the evidence is so lacking as to reduce the question to whether or not this owner would be liable for a sudden act of a fierce and violent nature contrary to the usual habits of the jack.

The evidence discloses these facts. Dr. Poe, a veterinarian of many years experience, testified that, from his experience and observation extending over many years, a jack, by its very nature, is a dangerous animal. He stated, on cross-examination, that ''He never saw a bull or stud or jack that wasn't dangerous at times.'' He further said that all male hogs, bulls, and jacks have dangerous dispositions.

A Mr. Wainscott, who said he was afraid of jacks, warned appellee about this jack. He further stated that he heard appellee's son say to appellee that "he was going to get in trouble about that jack."

Appellee, himself, testified that during the breeding season, which was in the spring of the year, he kept the jack in an enclosure, but after season he put the jack in a field with some horses. He said: "They run together, but the horses were afraid of him." There is significance to the statement that "the horses were afraid of him." Appellee knew, according to his own statement, that horses were afraid of this jack. There must have been something about the jack's disposition, or in what it did, to create this fear on the part of the horses. Let us look at it this way. Suppose the court had permitted this matter to go to a jury. The question, then, would present itself to us in this fashion. Would there be enough evidence of probative value to support a verdict against the owner of this jack? We conclude there would have been. After all that is the real test to apply in the giving of a peremptory instruction on the insufficiency of the evidence.

We conclude the court erred in directing the verdict herein.

The judgment is reversed for proceedings consistent herewith.