**Edna EWING et al., Appellants,**

**v.**

**Earnest PRINCE et al., Appellees.**

Court of Appeals of Kentucky.

March 22, 1968.

G. Wayne Bridges, Bridges & Nelson, Covington, for appellants.

Rodney S. Bryson, Ware, Bryson, Nolan & West, John R. Blakely, Covington, for appellees.

STEINFELD, Judge.

Jezebel was the daughter of Ethbaal, King of Tyre, and wife of Ahab, King of Israel. She introduced Baal worship, persecuted Elijah, instigated the murder of Naboth and made her name a term of reproach. 2 Kings, ix, 30. A present day Jezebel was a mare owned by appellees Earnest Prince and Leona Prince. Just as biblical Jezebel is defined as "an impudent, violent, unscrupulous, vicious woman" our equine Jezebel is charged with having the same characteristics.

Edna Ewing, wife of Carl Ewing, sued the Princes as the owners of Jezebel and Hammons, her rider, to recover damages because of injuries Edna suffered when she was kicked by the mare. In the same action Carl Ewing claimed loss of consortium. A motion by the defendants for a

directed verdict was sustained, judgment was entered accordingly and the Ewings appeal. We affirm.

The action is predicated upon a claim that the owners and the rider "knew, or should have known through the exercise of ordinary care, that their horse had previously kicked persons and animals, and said fact was known by all of said defendants, or should have been known by said defendants * * *".

On June 21, 1964, Edna and several others were on a pleasure horseback ride along a highway. The horse on which Edna was riding approached Jezebel from the rear. Jezebel kicked Edna on the leg injuring her severely.

A witness testified that early in the summer of 1964 a horse he was riding approached Jezebel from the rear, came in contact with her and swerved her around whereupon she kicked him and the horse he was riding. This same witness and another said that when Jezebel was in a parade about a week following the date on which Edna was hurt Jezebel reared up and she and her rider fell. However, they admitted that she was frightened by a flag-draped buggy which rolled back toward the mare. Also there was testimony that Jezebel had kicked at some other horses when in a pasture with them.

Mr. Prince was called by appellants as if under cross-examination and he stated that his family had owned Jezebel for five years, and that during that time the mare had been turned "in the yard with (their) children". He said that Mrs. Prince and their nine year old daughter sometimes rode Jezebel. When asked whether he would say that " * * * she was the most gentle horse (he) had" he answered, "No, I wouldn't say that. She had plenty of life. A lively horse. Gentle. She could be handled by anybody."

The parade incident did not show viciousness. Barnett v. LaMesa Post No. 282 etc., 15 Cal.2d 191, 99 P.2d 650 (1940). Could it be said that Flicka [1] was a vicious animal because it fought to protect its master? No one would contend that the horse was vicious when it planted its two hind feet on the nose of the lion to teach it that the best laid-out scheme often has a kickback.[2]

Autrey's Champion and Rogers' Trigger have become famous for their kicking, dancing and rearing. Such liveliness is not viciousness. Mares are not unknown for the problems they create. Teddy Roosevelt is quoted as having said "No cow-boy ever rides anything but horses, because mares give great trouble where all the animals have to be herded together".[3] Surely in this state, the home of the Thoroughbred, the breeding ground of horses famous for speed, spirit and show, and where the horse is king, the evidence in this case does not prove dangerous propensities or viciousness.

Unfortunately, Jezebel did not have the talking ability of "Mr. Ed", therefore, the evidence could not show the reason for her actions. Possibly she was sensitive when horses approached her from the rear, and probably she was trying to avoid perpetuating the stigma originated by the biblical Jezebel.

To prevail it was incumbent upon the claimant "to present a prima facie case of dangerous and vicious propensities in the animal in question." Kling v. United States Fire Ins. Company, La.App., 146 So. 2d 635, 1 A.L.R.3d 1011 (1962). Also see Barnett v. LaMesa Post No. 282 etc., 15 Cal.2d 191, 99 P.2d 650 (1940). And appellants had to show that the animal was inclined to commit an injury of the class complained of and that the person upon whom liability was proposed to be fixed had knowledge of the dangerous propensities of the animal. True v. Shelton, 314 Ky. 446, 235 S.W.2d 1009

1. My Friend Flicka by Mary O'Hara.

2. The Horse and the Lion from Aesop's Fables.

3. The Century, xxxv. 656.

(1951). Vicious or dangerous propensities toward other animals, without showing such tendencies toward humans, is not the test. Rickett v. Cox, 297 Ky. 30, 178 S.W.2d 830 (1944); Fowler v. Helck, 278 Ky. 361, 128 S.W.2d 564 (1939); 4 Am.Jur.2d 333, Animals, § 86.

The trial court properly held that the evidence did not meet the standard required.

The judgment is affirmed.

All concur.