Myron HOFER, on behalf of and as Guardian Ad Litem of Jason Hofer, a minor, and Myron Hofer and Doreen Hofer, husband and wife, Plaintiffs and Appellants,

v.

Clifford A. MEYER and Evelyn Meyer, husband and wife, and Richard Kiefer and Dorothy J. Kiefer, husband and wife, Defendants and Appellees.

No. 12861.

Supreme Court of South Dakota.

Argued May 28, 1980.

Decided July 30, 1980.

David J. Stanton, Rapid City, for plaintiffs and appellants.

Thomas E. Simmons of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, for defendants and appellees Clifford A. and Evelyn Meyer.

Gene R. Bushnell of Costello, Porter, Hill, Nelson, Heisterkamp & Bushnell, Rapid City, for defendants and appellees Richard and Dorothy J. Kiefer.

HERTZ, Circuit Judge.

At a pretrial conference the trial court granted summary judgment in favor of defendants (Clifford and Evelyn Meyer and Richard and Dorothy Kiefer) as to Counts 2, 3, 5, 6 and 7 of the complaint. The trial court ruled that trial would proceed on

Counts 1 and 4. At the close of the trial, defendants' motions for directed verdict were granted, and judgment was entered accordingly. Plaintiffs (Myron and Doreen Hofer for themselves and on behalf of their son Jason) appeal. We affirm the judgment as to Counts 1 and 4 and remand the matter to the trial court for trial on Count 6, which alleged a cause predicated upon Restatement (Second) of Torts § 339.

On January 16, 1974, Jason Hofer, then three years of age, was found injured and semi-conscious on premises owned by the Kiefers. There were no eyewitnesses to the incident. The evidence shows that Mrs. Hofer was employed as a nurse and that Jason stayed with a babysitter while she was at work. On the day of Jason's injury, he and his mother had returned home. The weather was pleasant for that time of the year and Mrs. Hofer permitted Jason to remain outside while she changed her clothes. Jason had never left the yard before, but when Mrs. Hofer checked a short time later, he had disappeared. Jason was subsequently found lying within a barbed wire enclosure on the Kiefer property, which was within a few blocks of the Hofer residence. The enclosure was used by Meyers to contain their horse. The horse was a seven-year-old gelding, and it is undisputed that he was an extremely gentle horse and that he was used by the children and grandchildren of the Meyers and Kiefers for riding purposes. To the north of the enclosure, on property owned by Winston Olson, two other horses were kept. The Kiefer and Olson properties were separated by two strands of barbed wire. The testimony at trial indicates that the Kiefer enclosure consisted mostly of a two-strand barbed wire fence and that in one area there was only a single barbed wire. The Meyers apparently maintained the fence because their horse was kept in the enclosure.

There was evidence from which the jury could have found that Jason had been kicked by Meyers' horse.

The Kiefer property is within the city limits of Rapid City, South Dakota. There was testimony indicating that on three sides of the premises where Jason was found there were a number of other residences and that there were a number of children living in the area. There was a hill on the fourth side of the property. Mr. Olson testified that during the wintertime "some kids" would play there and slide down the hill. Mr. Meyer testified as follows:

Q. To your knowledge, were there ever any strange children other than your own that you didn't know or weren't acquainted with back in that area?

A. Not in Dick's area. I saw one little boy over in Mr. Olson's pasture chasing the horses one day, and I run him out, but that's about the only one I could say.

Both Mr. Kiefer and Mr. Meyer testified that they had never seen other children on the Kiefer property, nor had they ever received any complaints about children being in the area.

Mrs. Ormie Martin, a neighbor to the immediate west of Kiefers, testified with regard to an event she witnessed on the day of the accident:

Well, I saw—I was sitting in the chair, and all I saw was two little red clad legs in front of the garage, and it flashed through my mind that Tricia was there, their little granddaughter, and that's all I saw. I couldn't tell you what the top part was, I just saw the little legs.

There is evidence that Jason's little dog accompanied him when he left the yard that day, although the dog was not found near Jason after the accident. Mr. Meyer testified that he was aware of the danger created by horses trying to defend themselves from dogs and that on at least one occasion he had witnessed dogs and the horses facing off.

At the pretrial conference, the trial judge ruled on the counts in the complaint as follows:

Count 1 was construed by the court to be a general negligence cause of action and the Hofers were permitted to proceed to trial on that count.

Count 2 alleged certain city ordinance violations, and the court ruled, as a matter of law, that these were health ordinances, not safety ordinances, and that no private action for damages could be maintained.

Count 3 was held by the trial court to be a claim based upon a violation of city ordinance and alleging a public nuisance. The court held that no private right of action existed on behalf of the Hofers. Count 4 was an allegation that Jason was a licensee on the Kiefer property. The trial court held that this was essentially a negligence claim and permitted the Hofers to proceed to trial on that count. Count 5 alleged an attractive nuisance, and the court ruled, as a matter of law, that the horse in question was not an artificial condition within the attractive nuisance doctrine and that no cause of action was stated.

Count 6 was determined by the court to allege a cause of action based upon Restatement (Second) of Torts § 339, and it ruled, as a matter of law, that § 339 was not applicable.

Count 7 was construed by the court to allege a cause of action based upon the "playground" doctrine, but the court determined that the allegation did not state a cause of action.

Counts 1 and 4 proceeded to trial. After all parties had rested, defendants renewed their motions for directed verdict made at the close of plaintiffs' case. The trial court found that there was no evidence that would raise Jason's status above that of trespasser and that, accordingly, the only duty owed by defendants was to avoid wanton or willful conduct that would cause injury. The trial court further held that there was no evidence to show any knowledge on the part of the Kiefers that anyone was trespassing on their property. With regard to the Meyers, the trial court held that owners of a domestic animal must have reason to have knowledge of a dangerous propensity of the animal or of that class of animals as a whole and that there was simply no evidence to show such knowledge

on the part of the Meyers or to put them on notice of any problem with the horse in question. The court further stated that mere inference when all other possible causes are equal is not sufficient to present the matter to the jury. The trial court granted defendants' motions for directed verdict.

This case is a classic example of the confusion created by the land entrance concepts embodied in those classifications still persisting in South Dakota, namely, "invitee," "licensee," and "trespasser." The Hofers urge that these classifications have now outlived their usefulness and that they should be abolished and the case decided as in other negligence cases. This would mean that cases such as this one would be determined under the theory of ordinary negligence or, as sometimes stated, "due care under the circumstances." Because of our determination that a cause of action exists under the attractive nuisance doctrine, we decline to consider rejection of the various classifications above noted.

At oral argument, counsel for plaintiffs admitted that Jason was a trespasser at the time of his injury. Even so, we are of the opinion that plaintiffs have stated a cause of action under the attractive nuisance doctrine. In South Dakota that doctrine is the same as that stated in Restatement (Second) of Torts § 339:

A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if

(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.

See: *Cargill, Incorporated v. Zimmer*, 374 F.2d 924 (8th Cir. 1967), and *Morris v. City of Britton*, 66 S.D. 121, 279 N.W. 531 (1938).

 In our opinion, the facts elicited at the trial were sufficient to present a jury issue under appropriate instructions embodying the elements set forth in Restatement (Second) of Torts § 339.

The trial court found as a matter of law that the horse owned by the Meyers and kept in the yard owned by the Kiefers was not an "artificial condition" upon the land. We, however, conclude that whether a horse is an "artificial condition" within the meaning of Restatement (Second) of Torts § 339, is a matter to be determined by the special facts in each case. It is said that when a condition on the land is created by the action of man, the condition is "artificial" and not "natural" for the purposes of the attractive nuisance doctrine. *Clarke v. Edging*, 20 Ariz.App. 267, 512 P.2d 30 (1973). In the *Cargill* case, supra, a twelve-year-old boy climbed the ladder up the side of a seventy-two-foot silo. His climb resulted in a fall, and the court held that the pigeons at the top of the silo constituted a distraction that obscured the present danger of excessive height. Consistent with Restatement (Second) of Torts § 339, the court held that the pigeons constituted an artificial condition upon the land.

In the instant case, defendants placed a horse in a poorly fenced yard easily accessible to children. A child of three, indeed even older children, would not perceive the horse as being imminently dangerous. Add to the child's presence that of his little dog, and you have the ingredients of a foreseeably dangerous condition in that defendants had prior knowledge of dogs disturbing the tranquility of the Olson horses located on property adjacent to the Kiefer property.

Further, even a gentle horse may kick when startled by the sudden presence of a little boy appearing without warning.

Restatement (Second) of Torts § 339(a) requires that the possessor "knows or has reason to know that children are likely to trespass." Here, there is evidence that children occasionally were seen in the area, albeit, not specifically on the Kiefer property. There were residential areas on at least two sides of the property. Mr. Meyer testified that on at least one occasion he saw a little boy chasing the horses in the Olson pasture, which is immediately adjacent to the Kiefer property. The fence around the Kiefer yard consisted of only one or two strands of barbed wire, admittedly inadequate protection against the curiosity of the children in the area. The evidence, as a whole, is sufficient, under appropriate instructions, to put the foreseeability issue to the jury.

Restatement (Second) of Torts § 339(b) requires that the condition be one that the possessor knows or has reason to know involves an unreasonable risk of death or serious bodily harm to children. Here, the horse was placed within the city limits of Rapid City in a poorly fenced yard near other residences with children nearby. A horse situated thusly could be found by the jury to be an unreasonable risk, and the condition created by the presence of the horse constituted a submissible issue under the facts presented.

Restatement (Second) of Torts § 339(c) requires that a determination be made that because of his youth, the child was unable to discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it. Here we have a three-year-old boy certainly unable to comprehend the danger involved in coming near what was then a gentle and peaceful animal. Jason was obviously at an age where he could not comprehend that his sudden presence or that of his little dog would change the demeanor of an otherwise gentle horse.

Restatement (Second) of Torts § 339(d) requires the possessor to eliminate the dan-

ger where the cost of doing so is slight as compared with the risk to children in the area. Here it was just a matter of some additional wiring that would have been adequate to keep little children out of the horse yard.

Restatement (Second) of Torts § 339(e) requires plaintiffs to show that defendants failed to exercise reasonable care to eliminate the danger or otherwise protect the children. This issue, under all of the facts, was one that should have been submitted to the jury.

In *Cargill, Incorporated v. Zimmer*, it was stated:

> South Dakota law does not require a landowner to make his land "child-proof." But at the same time we recognize that modern decisions in this area of the law increasingly acknowledge the humanitarian viewpoint that the life of a child is to be balanced as a heavy interest when weighed against the utility of simple precautions to guard against danger. In applying the Restatement, § 339, no one of the five factors can be given isolated treatment in determining defendant's negligence. Their relationship is closely interwoven with one another in determining the basic question of whether there is a foreseeable harm.

374 F.2d at 930.

The question presented is whether there was sufficient evidence from which the jury could reasonably find that defendants could have foreseen that an unreasonable risk of harm to trespassing children existed under the facts and the law stated. We hold that a submissible issue did exist and that the trial court erred in granting defendants' summary judgment motions as to Count 6 of the complaint. The issue should have been resolved by the jury. We find the other errors claimed by plaintiffs to be without merit.

Accordingly, the judgment as to Counts 1 and 4 is affirmed, and the matter is remanded to the trial court for trial of plaintiffs' cause of action predicated on Restatement (Second) of Torts § 339.

DUNN, MORGAN and FOSHEIM, JJ., concur.

WUEST, Circuit Judge, concurs specially.

HERTZ, Circuit Judge, sitting for WOLLMAN, C. J., disqualified.

WUEST, Circuit Judge, sitting for HENDERSON, J., disqualified.

WUEST, Circuit Judge (concurring specially).

I agree the case should be reversed, however, I would reverse upon a different legal theory than the majority. I would simply reject the arbitrary classification of "trespasser," "invitee," and "licensee." These classifications have descended from the feudal system wherein the courts of that era protected the landowners. These ancient decisions have no place in modern society. The attractive nuisance doctrine was a judicial innovation to circumvent those harsh rules in specified situations involving children. A decision holding that a horse is an artificial condition is stretching the rule to avoid an unjust result. Other courts have refused to hold that an animal constitutes an artificial condition. *Hall v. Edlefson*, 498 S.W.2d 514 (Tex.Civ.App.1973); *Gonzales v. Wilkinson*, 68 Wis.2d 154, 227 N.W.2d 907 (1975). There have been few decisions upon the subject. 64 A.L.R.3d 1069. One of the reasons being the growing tendency on the part of modern courts generally to eliminate or denigrate the trespasser-licensee-invitee distinction. See, 64 A.L.R.3d 1069, 1070, n. 10.

In its decision abolishing common-law classifications of trespasser, licensee, and invitee, the Alaska Supreme Court said in *Webb v. City and Borough of Sitka*, 561 P.2d 731, 732 (Alaska 1977): "[W]e have reached the conclusion that the subtleties and refinements of the rigid common law classifications of trespassers, licensees and invitees adds confusion to the law and is no longer desirable in modern times." The common law is not a rigid and arbitrary code, crystallized and immutable. Rather, it is flexible and adapts itself to changing conditions. It is an accumulation of expres-

sions of the various judicial tribunals in their efforts to ascertain what is right and just between individuals with respect to private disputes. What may be considered a just disposition of a dispute at one stage of history may not be at another stage, considering changing social, economic and other conditions of society. The principle of stare decisis was not meant to keep a stranglehold on developments which are responsive to new values, experiences and circumstances. *Webb v. City and Borough of Sitka,* supra.

The first significant case eradicating entrant "status" as a factor in determining the landowner's liability was *Kermarec v. Transatlantique,* 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959), where the United States Supreme Court refused to extend the concept of entrant status to admiralty laws. In 1968, the California Supreme Court in *Rowland v. Christian,* 69 Cal.2d 108, 70 Cal. Rptr. 97, 443 P.2d 561 (1968), 32 A.L.R.3d 496, relying on a section of their Civil Code, rejected entrant distinctions on the following reasoning:

In refusing to adopt the rules relating to the liability of a possessor of land for the law of admiralty, the United States Supreme Court stated: The distinctions which the common law draws between licensee and invitee were inherited from a culture deeply rooted to the land, a culture which traced many of its standards to a heritage of feudalism. In an effort to do justice in an industrialized urban society, with its complex economic and individual relationship, modern common-law courts have found it necessary to formulate increasingly subtle verbal refinements, to create subclassifications among traditional common-law categories, and to delineate fine gradations in the standards of care which the landowner owes to each. Yet, even within a single jurisdiction, the classifications and subclassifications bred by the common law have produced confusion and conflict. As new distinctions have been spawned, older ones have become obscured. Through this semantic morass the common law has moved, unevenly and with

hesitation, towards "imposing on owners and occupiers a single duty of reasonable care in all of the circumstances." 69 Cal.2d at 116, 70 Cal.Rptr. at 102, 443 P.2d at 566.

A man's life or limb does not become less worthy of protection by the law nor a loss less worthy of compensation under the law because he has come upon the land of another without permission or with permission but without a business purpose. Reasonable people do not ordinarily vary their conduct depending upon such matters, and to focus upon the status of the injured party as a trespasser, licensee, or invitee in order to determine the question whether the landowner has a duty of care, is contrary to our modern social mores and humanitarian values. The common law rules obscure rather than illuminate the proper considerations which should govern determination of the question of duty.

It bears repetition that the basic policy of this state set forth by the Legislature in section 1714 of the Civil Code is that everyone is responsible for an injury caused to another by his want of ordinary care or skill in the management of his property. The factors which may in particular cases warrant departure from this fundamental principle do not warrant the wholesale immunities resulting from the common law classifications, and we are satisfied that continued adherence to the common law distinctions can only lead to injustice or, if we are to avoid injustice, further fictions with the resulting complexity and confusion. We decline to follow and perpetuate such rigid classifications. The proper test to be applied to the liability of the possessor of land in accordance with section 1714 of the Civil Code is whether in the management of his property he has acted as a reasonable man in view of the probability of injury to others, and, although the plaintiff's status as a trespasser, licensee, or invitee may in the light of the facts giving rise to such status have some bearing on the question of liability, the status is not determinative.

69 Cal.2d at 118, 70 Cal.Rptr. at 104, 443 P.2d at 568.

Since the decision of *Rowland*, the following states have shown by these decisions their joining of the continually growing group which reject land entrant "status" in whole or in part. These states have totally rejected common law status: *Smith v. Arbaugh's Restaurant, Inc.*, 469 F.2d 97 (D.C. Cir.1972); *Webb v. City and Borough of Sitka*, supra; *Rowland v. Christian*, supra; *Mile High Fence Company v. Radovich*, 175 Colo. 537, 489 P.2d 308 (1971); *Pickard v. City and County of Honolulu*, 51 Haw. 134, 452 P.2d 445 (1969); *Shelton v. Aetna Casualty & Surety Company*, 334 So.2d 406 (La. 1976); *Peterson v. Balach*, 294 Minn. 161, 199 N.W.2d 639 (1972); *Cunningham v. Hayes*, 463 S.W.2d 555 (Mo.1971); *Ouellette v. Blanchard*, 116 N.H. 552, 364 A.2d 631 (1976); *Scurti v. City of New York*, 40 N.Y.2d 433, 387 N.Y.S.2d 55, 354 N.E.2d 794 (1976); *Mariorenzi v. Joseph DiPonte, Inc.*, 114 R.I. 294, 333 A.2d 127 (1975); and 32 A.L.R.3d 496.

In addition to these states, Massachusetts and Wisconsin have rejected the distinction between "licensees" and "invitees." See: *Mounsey v. Ellard*, 363 Mass. 693, 297 N.E.2d 43 (1973), and *Antoniewicz v. Reszcynski*, 70 Wis.2d 836, 236 N.W.2d 1 (1975). In 1977, our sister state of North Dakota followed suit, *O'Leary v. Coenen*, 251 N.W.2d 746 (N.D.1977). The states which have followed *Rowland v. Christian*, supra, have done so because it is sound legal policy. South Dakota has a further and very interesting reason for following *Rowland v. Christian*, supra, because that decision could be seen as an authoritative and original interpretation of our own statute.

Section 1714 of the California Civil Code, which the court relied on, is the identical section as 979 of the Civil Code of Dakota Territory of 1877, which passed unchanged into the Code of 1887 as § 3603, and from there to § 1297 of the Civil Code of 1903. From there it passed into the Revised Code of 1919, unchanged. The words of the statute remained unchanged until the 1939 recodification of the South Dakota Code, at

that time the language was somewhat changed in recodification, to the present language of SDCL 20–9–1, which reads, in pertinent part:

> Every person is responsible for injury to the person, property, or rights of another caused by his willful acts or caused by his want of ordinary care or skill, subject in the latter cases to the defense of contributory negligence.

Contrast this to the original version which reads, in pertinent part:

> Every one is responsible, not only for the result of his wilful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person, except so far as the latter has, wilfully or by want of ordinary care, brought the injury on himself.

There is no evidence of any intentional change in the law by legislative enactment. While SDC 65.0202(1) of 1939 treats the recodification as a repeal and reenactment, there is no evidence of any intent to alter the meaning of the section.

I would hold that an entrant's "status" as a trespasser, licensee, or invitee is no longer controlling but is only one element among many to be considered in determining the landowner's (or party responsible for the particular condition of the premises) liability under ordinary standards of negligence, with the duty of the landowner (or party responsible for the particular condition of the premises) being no more or no less than that of any other alleged tort-feasor. He must conduct himself as a reasonable man, under the circumstances, on land which he controls as well as in other places. Except in those cases where reasonable minds could not differ, whether he has done so, or not, is always a question for the finder of fact. *Mile High Fence Company v. Radovich*, 28 Colo.App. 400, 474 P.2d 796 (1970).