**NORTH HARDIN DEVELOPERS, INC., Appellant,**

v.

**Rachel CORKRAN, by her mother and next friend, Diane CORKRAN, Dean Pearman and Patricia Langseth, Appellees.**

**No. 91–SC–864–DG.**

Supreme Court of Kentucky.

Sept. 24, 1992.

Kim F. Quick, Collier, Arnett, Quick & Coleman, Elizabethtown, for appellant.

Ralph M. Mobley, Elizabethtown, A. Thomas Johnson, Louisville, Patricia Langseth, Elizabethtown, for appellees.

Wayne J. Carroll, Edward H. Bartenstein, MacKenzie & Peden, P.S.C., Louisville, for amicus curiae, Kentucky Farm Bureau Federation.

R. Lee Steers, Jr., Franklin, for amicus curiae, Kentucky Academy of Trial Attys.

LAMBERT, Justice.

The issue here is whether horses or other domesticated livestock, without vicious propensities, kept on a farm which is in close proximity to two subdivisions should be considered as an attractive nuisance denying the landowner protection of KRS 381.231 and KRS 381.232. The trial court granted summary judgment to the landowner, but the Court of Appeals reversed and designated its opinions [1] to be published. We granted discretionary review to resolve what may be some uncertainty in the law on this point.

Five-year-old Rachel Corkran was tragically injured by a horse kept on a 27–acre farm owned by North Hardin Developers. Testimony was presented that Rachel, on a dare made by other children to touch one of the horses, climbed through the barbed wire fence surrounding the farm and apparently approached the horse from behind. The horse, not known to be violent, struck Rachel with a hind leg fracturing her skull.

The 27–acre farm, owned by North Hardin, was located in a semi-rural area outside Radcliff, Kentucky. Adjoining the farm were two subdivisions, at least one of which had been developed by North Hardin. A few lots in the subdivision were directly adjacent to the farm which was enclosed with a barbed wire fence. A large number of small children lived in the immediate vicinity of the farm and it was known to the owner or its agents that trespassing by children had occurred. Notices had been posted warning trespassers to stay off and an individual had been hired on a part-time basis to chase the children away.

Reversing the trial court, a majority of the Court of Appeals panel recognized that the keeping of domestic animals without vicious propensities does not normally constitute a basis for damages for injury, but held the situation here to be different. It said:

"[W]hen a herd of horses is introduced into an area heavily populated with children by the very company which developed the adjacent subdivision where they live, a different situation is presented.

. . . .

The maintenance of a herd of horses in the midst of two residential subdivisions may or may not involve an unreasonable risk of death or serious bodily harm to trespassing children. We believe that this is a matter to be determined by the special facts in each case and that the determination should be made by a jury."

The beginning point in analyzing this case is KRS 381.232, a statute which declares that the owner of real estate shall not be liable for damages to a trespasser for injury except in circumstances clearly inapplicable here. This rule of law is modified by the preceding statute, KRS 381.231(1) which defines trespasser but excludes from the definition "persons who come within the scope of the 'attractive nuisance' doctrine." The constitutionality of the foregoing statutes was upheld against a claim that they violated § 54 of the Constitution of Kentucky. *Kirschner v. Louisville Gas & Electric Co.*, Ky., 743 S.W.2d 840 (1988). We are not presented with a proper claim that the statutes violate any other section of the Kentucky Con-

---

1. Judges Huddleston and Emberton agreed that the trial court should be reversed, but each wrote a separate opinion and differed slightly on the grounds for reversal. Judge Wilhoit dissented by separate opinion.

stitution as the requirements of *Maney v. Mary Chiles Hospital,* Ky., 785 S.W.2d 480 (1990), were not satisfied.

From the foregoing, and as the evidence is undisputed that the child was a trespasser and that the horses were without any known vicious propensities, the case must be resolved on the attractive nuisance doctrine. Said otherwise, are horses in a pasture field an attractive nuisance under the law of Kentucky and if not, should the law be changed to declare them so?

The parties agree that the attractive nuisance doctrine is controlling, but disagree mightily about its application to the facts presented here. Both sides have recognized our decision in *Louisville Trust Co. v. Nutting,* Ky., 437 S.W.2d 484 (1968), and the Court of Appeals decision in *Helton v. Montgomery,* Ky.App., 595 S.W.2d 257 (1980), wherein the definition of attractive nuisance set forth in *Restatement (Second) of Torts,* § 339, was followed. For convenient review, we quote § 339 in its entirety:

"A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if

(a) the place where the condition exists is upon which the possessor knows or has reason to know that children are likely to trespass, and

(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children."

There is a paucity of authority on the question at hand. At 64 A.L.R.3d 1069 (1975), cases are collected in which courts have considered whether and under what circumstances an animal constitutes an attractive nuisance. The annotation recognizes that a majority of American jurisdictions have adopted the *Restatement (Second) of Torts,* § 339, view and states:

"Only a few courts have considered the application of the above stated principle *[Restatement,* § 339] in cases involving injury caused by animals, and of these a majority have held the attractive nuisance doctrine to be inapplicable as a matter of law."

Of the cases collected in 64 A.L.R.3d 1069 (1975), and those cited by the parties, *Dyches v. Alexander,* Ky., 411 S.W.2d 47 (1967), held that a dog is not an attractive nuisance and is not *per se* of a dangerous character; *Hall v. Edlefson,* Tex., 498 S.W.2d 514 (1973), held that a Shetland pony was not an attractive nuisance and added that no authority could be found which holds domesticated animals to be considered as such; *Brady v. Skinner,* App., 132 Ariz. 425, 646 P.2d 310 (1982), failed to apply the attractive nuisance doctrine to injury inflicted by a mule; and *Ewing v. Prince,* Ky., 425 S.W.2d 732 (1968), required proof that the horse which inflicted the injury possessed "dangerous and vicious propensities," impliedly rejecting any contention that a horse constituted an unreasonable risk of harm. In *Whitcanock v. Nelson,* 81 Ill.App.3d 186, 36 Ill. Dec. 418, 400 N.E.2d 998 (1980), reviewing a claim arising out of injuries to a two-and-a-half-year-old child by being trampled by a colt, the court held:

"We believe that the law imposes a duty on these defendants to remedy the conditions on their land which are dangerous to children generally, and that this colt or horse was not dangerous, as a matter of law, to children generally." *Id.* 36 Ill.Dec. at 422, 400 N.E.2d at 1002.

While the cases discussed and others we have considered hardly speak with a single voice, the predominant view appears to be that ordinary domesticated animals do not constitute "an unreasonable risk of death or serious bodily harm to ... children...."

as required by the attractive nuisance doctrine. Moreover, we have difficulty characterizing domesticated animals, i.e. horses, cattle, hogs, sheep, and chickens, as artificial conditions when securely maintained upon a farm. See *Restatement (Second) of Torts*, § 339. In *Gonzales v. Wilkinson*, 68 Wis.2d 154, 227 N.W.2d 907 (1975), and *Hartsock v. Bandhauer*, App., 158 Ariz. 591, 764 P.2d 352 (1988), dogs were held not to be "an artificial condition." Traditional farm animals would seem to be even less subject to such a characterization.

In *Perry v. Williamson*, Ky., 824 S.W.2d 869 (1992), this Court recently considered a case in which a licensee was injured by a falling tree limb. Her claim against the landowner resulted in a jury verdict in her favor and judgment was entered thereon. When the case reached this Court, we reviewed a number of issues relating to the liability of owners and occupiers of land. Relying on the *Restatement (Second) of Torts*, § 342, as appropriately describing the circumstances in which the possessor of land is subject to liability for a dangerous condition which he knows or should have known to involve an unreasonable risk of harm to licensees, we required the landowner to either make the land as safe as it appears to be or disclose the danger. We held it to be immaterial whether the dead tree which the landowner knew or should have known to be dead was characterized as a natural or artificial condition. We described as a "definitive text" Harper, James and Gray, *The Law of Torts*, 2d ed, Vol. 5, § 27.8–11 (1986), and quoted from § 27.9. We repeat a portion of that quotation here:

> "The licensee must show defendant's knowledge of the dangerous pitfall, whether it be natural condition or arrangement of premises." *Id.* at 210.

Our decision in *Perry v. Williamson, supra,* and the authority cited therein are in harmony with the authorities heretofore cited with respect to domesticated animals. It is necessary to show that the condition causing injury was foreseeably dangerous and domesticated animals have not been so regarded.

A number of this Court's decisions have expressed the view that the law should require all persons to exercise ordinary care for the safety of all other persons who might foreseeably be injured by their acts or omissions. This is an expression of what has been described by some as "a universal duty owed by all to all" and the duty of care must be commensurate with the potential harm encountered. *Gas Service Company, Inc. v. City of London,* Ky., 687 S.W.2d 144, 148 (1985). *Grayson Fraternal Order of Eagles v. Claywell,* Ky., 736 S.W.2d 328 (1987); *M & T Chemicals, Inc. v. Westrick,* Ky., 525 S.W.2d 740 (1974); and *Greyhound Corp. v. White,* Ky., 323 S.W.2d 578 (1959). The distinction, however, between this case and the foregoing general rule is that domesticated livestock, absent a history of dangerous propensities, do not constitute a foreseeable risk of harm. The facts here are in dramatic contrast with *Greyhound Corp. v. White, supra,* which claimed negligence by a school bus driver for failing to pull off the highway onto an adjacent gravel strip while waiting to pick up children; *Gas Service Company, Inc. v. City of London, supra,* which claimed negligence in the installation and maintenance of sewer lines in close proximity to existing gas lines; and *Grayson Fraternal Order of Eagles v. Claywell, supra,* which claimed negligence against a dram shop owner who furnished intoxicating liquors to a person under the influence of alcohol in circumstances where his subsequent operation of a motor vehicle was foreseeable. Prior to application of the universal duty of care to a particular set of facts, it must appear that the harm was foreseeable and the facts must be viewed as they reasonably appeared to the party charged with negligence, not as they appear based on hindsight. *Mitchell v. Hadl,* Ky., 816 S.W.2d 183 (1991). As to what constitutes an unreasonable risk of harm, Prosser has said:

> "Nearly all human acts, of course, carry some recognizable but remote possibility of harm to another.... Those against which the actor is required to take precautions are those which society, in gen-

eral, considers sufficiently great to demand them. No man can be expected to guard against harm from events which are not reasonably to be anticipated at all, or are so unlikely to occur that the risk, although recognizable, would commonly be disregarded." W. Prosser, *Torts*, § 31 (1978).

For its decision, the Court of Appeals relied on *Hofer v. Meyer*, S.D., 295 N.W.2d 333 (1980), which permitted imposition of liability upon a landowner whose horse injured a child. The horse was kept within the city limits in a residential yard enclosed by two strands of barbed wire and residences where children lived were on three sides of the place where the horse was kept. The court observed that elimination of the danger would have been slight when compared with the risk to children in the area:

"Here it was just a matter of some additional wiring that would have been adequate to keep little children out of the horse yard."

We believe the facts presented here differ substantially from those in *Hofer*. These horses were not kept in a residential yard, but on a 27–acre farm. The landowners had attempted, albeit unsuccessfully, to prevent trespassing by the children and the cost of rendering the farm inaccessible to children would have been prohibitive. We need not now determine whether on identical or similar facts this Court would follow the holding in *Hofer*. The factual differences are sufficient.

As the undisputed facts presented here demonstrate appellant's entitlement to judgment as a matter of law, we conclude that the trial court correctly granted summary judgment. As such, we reverse the Court of Appeals and remand to the trial court for reinstatement of its judgment.

STEPHENS, C.J., and REYNOLDS, SPAIN and WINTERSHEIMER, JJ., concur.

LEIBSON, J., dissents by separate opinion in which COMBS, J., joins.

LEIBSON, Justice, dissenting.

Respectfully, I dissent.

This is not a farm animal case, but an urban cowboy case. I agree with the Majority that *ordinarily* it is not an attractive nuisance to maintain on your property livestock, including horses and other domestic farm animals. But this case is different, and it is as important for the law to discriminate between differences as it is to apply neutral principles equally where no differences exist. This was recognized in the Court of Appeals' Opinion, which stated:

"[W]hen a herd of horses is introduced into an area heavily populated with children by the very company which developed the adjacent subdivision where they live, a different situation is presented."

*Ordinarily* keeping animals on your property is a natural condition which is not included within the parameters of the attractive nuisance doctrine. But no rule should be applied blindly regardless of circumstance. It may be that upon trial of this case, the claimant will be unable to prove the facts as stated in the Court of Appeals' Opinion. Nevertheless, in the absence of facts or circumstances establishing that "as a matter of law, it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor and against the movant," a summary judgment is inappropriate. *Steelvest, Inc. v. Scansteel Service Ctr.*, Ky., 807 S.W.2d 476, 483 (1991). "[S]uch a judgment is only proper where the movant shows that the adverse party could not prevail under any circumstances." *Id.* at 480.

The holding of the Court of Appeals, which we should affirm, states:

"The maintenance of a herd of horses in the midst of two residential subdivisions may or may not involve an unreasonable risk of death or serious bodily injury to trespassing children. We believe that this is a matter to be determined by the special facts in each case and that the determination should be made by a jury."

This case is no different from *Perry v. Williamson*, Ky., 824 S.W.2d 869 (1992), in

that both involve a natural condition, the maintenance of which would not constitute negligence towards a person coming on to the property but for special circumstances justifying a different conclusion. If a herd of horses was brought to this residential area with the permission of the movant, this could qualify as an attractive nuisance. This was no longer a farm where the horses were indigenous to the area, nor were these horses there before the build-up of the surrounding suburban area. As stated in the *Restatement (Second) of Torts*, § 363, Comment B:

" 'Natural condition of the land' is used to indicate that the condition of the land has not been changed by any act of a human being...."

We have adopted a *per se* rule in circumstances where such a rule is inappropriate.

COMBS, J., joins this dissent.