ANNA GALBRAITH, as Administratrix of the Estate of JAMES F. GALBRAITH, Deceased, Appellant, v. JOHN B. PIKE & SON, INC., et al., Respondents.

Fourth Department, February 21, 1963.

*Francis G. Hessney* for appellant.

*Coyle, Marks & Jordan* (*William M. Marks* and *Paul K. Lange* of counsel), for John B. Pike & Son, Inc., respondent.

*Winchell, Goldwater & Connors* (*Richard H. Connors* of counsel), for Ernest Drew, respondent.

*Per Curiam.* The trial court erred in dismissing the complaint at the close of the plaintiff's case. The evidence established a prima facie case against the defendant Drew, both under section 240 of the Labor Law and under common-law principles, and it also established a prima facie case against the defendant Pike at common law.

The action had been brought by the plaintiff as administratrix of the estate of Frank Galbraith for the wrongful causing of his death. On April 12, 1961, the decedent had fallen to his death from a scaffold on which he was working as a painter in the pilot room of a research plant which was being built by the defendant Pike as general contractor. The defendant Drew was the subcontractor for the painting work.

Taking the view of the evidence most favorable to the plaintiff, as we must in reviewing a dismissal of the complaint at the close of the plaintiff's case, the facts may be fairly stated as follows:

The decedent was a free-lance painter who was retained by Drew, under an oral agreement, to paint the ceiling and the walls of the pilot room for the sum of $575. The pilot room was three stories high. Under the terms of the oral agreement, the decedent was to use his own spraying outfit and he was to furnish his own helper but Drew was to furnish the paint. The evidence warranted a finding that, under the agreement, it was Drew's obligation to provide a scaffold for the work.

When the decedent arrived for work on the morning of April 12, 1961, Drew informed him that his (Drew's) scaffold was " too low " and that he would try to borrow one from Pike. Pike's superintendent authorized Drew to use a seven-level scaffold, which was already standing in a corner of the pilot room, and Drew accordingly took possession of it and turned it over to the decedent.

The scaffold consisted of tubular pipes fastened together. Wooden planks had been placed on top of the scaffold to serve as a platform, which presumably could be used for the painting of the ceiling. At the side of the scaffold nearest the north wall against which it had been placed, there was an outrigger arrangement. This consisted of two brackets extending from the scaffold

toward the wall, upon which a plank had been placed to form a platform from which the wall could be painted. The outriggers could be lowered from level to level as the painting job progressed. There were no guardrails at the ends of the outrigger platform.

The decedent apparently completed the painting of the ceiling in the area of the scaffold and then, at some time during the first hour of his work, the decedent lowered the outrigger platform from the top or seventh level to the sixth level for the purpose of painting the upper part of the wall. He proceeded to spray paint to a point on the wall about 50 inches west of the westerly end of the platform and, in so doing, he fell off the end of the platform to the ground and sustained the injuries which caused his death.

A prima facie case was plainly made out against the defendant Drew both under the Labor Law and under common-law principles.

Section 240 of the Labor Law, insofar as here relevant provided:

"1. A person employing or directing another to perform labor of any kind in the * * * painting * * * of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding * * * and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed or directed.

"2. Scaffolding or staging more than twenty feet from the ground or floor * * * erected with stationary supports * * * shall have a safety rail of suitable material properly attached, bolted, braced or otherwise secured, rising at least thirty-four inches above the floor or main portions of such scaffolding or staging and extending along the entire length of the outside and the ends thereof".

To implement the statute, the Board of Standards and Appeals adopted rules 23–3.26, 23–12.5 and 23–12.10.

The scaffold, as supplied by the defendant Drew, violated the statute and the rules in several respects. The most important violation was the absence of guardrails at the ends of the outrigger platform.

We may assume for the purposes of the present appeal that the decedent was not an employee of Drew but was an independent contractor. Nevertheless, Drew was a person "directing" the decedent within the meaning of section 240 of the Labor Law. In view of the contractual arrangement under

which Drew was to supply the scaffold and in view of the fact that Drew actually did supply the scaffold upon which the decedent was working at the time of the fatal accident, it must be held that Drew in effect " directed " the decedent to use the scaffold supplied by him. In this situation, the statute is plainly applicable to Drew and he is subject to absolute liability for any violation of the statute. " The liability of the appellant under this section must rest on proof that the respondent was supplied with or directed by the appellant's superintendent to use the allegedly defective sling. A direction to use equipment under such circumstances carries with it an assurance that it is safe to use it. Consequently if so used in reliance thereon and injury results, liability attaches " (*Mendes* v. *Caristo Constr. Corp.,* 5 A D 2d 268, 270, affd. 6 N Y 2d 729).

There was no need to show that the defendant Drew directed the decedent in the manner of the performance of his work. Direction as to the manner of performance is not the sole basis upon which an owner or contractor may be held liable under the statute for an injury to an independent contractor or to an employee of an independent contractor. An owner or contractor supplying equipment may be held liable under the statute (1) because he gave a direction as to the manner of the performance of the work by the injured workman (e.g., *Blackwood* v. *Chemical Corn Exch. Bank,* 4 A D 2d 656, 657) or (2) because he directed the workman to use the equipment supplied by him, even though he did not give any direction as to the manner in which the work should be done (e.g., *Mendes* v. *Caristo Constr. Corp., supra*).

The defendant Drew also seeks to escape from the application of the statute on the ground that the scaffold had been materially altered by the decedent prior to the accident, citing *Kluttz* v. *Citron* (2 N Y 2d 379). But the alteration, according to the proof, consisted simply of moving the outrigger from one level to another. This was the very way in which it was contemplated that the scaffold would be used. In the *Kluttz* case, the painting contractor had sawed in half a ladder lent to him by the defendant and had made a wholly different piece of equipment out of it. Nothing of that kind was involved here.

Drew, of course, could also have been held liable by the jury upon the theory of common-law negligence. Since Drew was under a contractual obligation to supply a scaffold for the decedent's use, Drew was bound to exercise reasonable care to see to it that the scaffold which he supplied was safe. There was ample evidence from which the jury could have found that the scaffold was in a dangerous condition and that Drew knew

or should have known that it was unsafe. The principal difference between liability for violation of the statute and liability under common-law principles is that in the former case the liability would be absolute whereas in the latter liability would depend upon proof of lack of care. Also, as to the former, contributory negligence would not be a defense whereas as to the latter, it would be (*Koenig* v. *Patrick Constr. Corp.*, 298 N. Y. 313). This being a death case, contributory negligence on the part of the decedent would have to be pleaded and proved as an affirmative defense with respect to the common-law cause of action. At best, the issue was one for the jury and the dismissal of the complaint cannot be sustained on the ground of the decedent's contributory negligence.

As to the defendant Pike, the situation is a different one. In our opinion, Pike could not be held liable under section 240 of the Labor Law upon the proof in the present record. Pike did not "direct" the decedent to use the scaffold. Pike was under no obligation to supply the scaffold. Pike allowed Drew to use it solely as a favor to Drew. Under the cases, this was not enough to make Pike liable under the statute for the unsafe condition of the scaffold (e.g., *Glass* v. *Gens-Jarboe,* 280 App. Div. 378, affd. 306 N. Y. 786).

On the other hand, the evidence was plainly sufficient to make out a prima facie case against Pike at common law. The immediate use of the scaffold by the decedent in the condition in which it was at the time when Pike lent it to Drew was certainly within the range of what Pike should have anticipated. If Pike knew or should have known that the scaffold was then in an unsafe condition, it was liable for the resulting injury under common-law principles (*McGlone* v. *Angus, Inc.*, 248 N. Y. 197; *Quigley* v. *Thatcher,* 207 N. Y. 66; cf. *Cohen* v. *Josam Constr. Corp.*, 17 A D 2d 253).

The judgments appealed from should therefore be reversed and a new trial should be granted as to both defendants.

WILLIAMS, P. J., BASTOW, HALPERN, McCLUSKY and HENRY, JJ., concur.

Judgments and orders unanimously reversed on the law and a new trial granted, with costs to the appellant to abide the event.