■ LORE M. LEE, as Surviving Executrix of WALTER R. RERAT, Deceased, Respondent, v FLIGHT SAFETY, INC., et al., Appellants-Respondents. (Action No. 1.) LORE M. LEE, as Surviving Executrix of WALTER R. RERAT, Deceased, Respondent, v FLIGHT SAFETY, INC., et al., Appellants-Respondents. (Action No. 2.) JOSEPH N. MAZZA, as Administrator of the Estate of FRANCIS R. MAZZA, Deceased, Appellant, v LORE M. LEE, as Surviving Executrix of WALTER R. RERAT, Deceased, et al., Respondents. (Action No. 3.) (And Five Other Actions.)—In actions for wrongful death and property damage, the appeals are from stated portions of an order of the Supreme Court, Nassau County, entered November 3, 1977, which *inter alia,* (1) granted the motions of the adversely affected parties to set aside so much of the jury's verdict as was in favor of the appellants and (2) ordered a new trial. Order reversed insofar as appealed from, without costs or disbursements, verdict reinstated, and case remanded to Trial Term for the entry of an appropriate judgment in accordance herewith. On the evening of July 28, 1968, two private airplanes collided in midair near Republic Airport in Farmingdale, Long Island. One airplane was operated by Walter Rerat (Rerat). Katherine Rerat, his wife, and their grandchildren, Erica and Monica Lee, were

passengers in the airplane. The other airplane was piloted by Francis Mazza. Paul Laspina, and two others who are not parties in any of these actions, were Mazza's passengers. All persons in both airplanes were killed. Eight separate actions were commenced on behalf of the six above-named decedents. Other actions were commenced for the property damage to Rerat's airplane and for the loss of other of Rerat's personal property. Flight Safety, Inc., the owner of the airplane piloted by Mazza, interposed a counterclaim for property damage. Just prior to the collision, Rerat was preparing to land at Runway No. 32 at Republic, when he was instructed by the control tower not to land, but to execute a "go around", since a plane which was landing just ahead of him had not fully cleared the runway. The "go around" entailed regaining altitude, flying in a generally rectangular pattern and then coming in for a landing from the same direction from which he had previously attempted to land. Mazza was also preparing to land and had called into the landing tower for clearance. He was instructed to report back to the tower when he reached the area of "downwind leg" of the airport traffic pattern. The downwind leg was the area roughly parallel to the runway, where air traffic would be moving in the opposite direction to traffic which was closer to landing. The airplanes collided at approximately the midway point of the downwind leg. Rerat's administratrix claimed, in all of the actions, that Rerat was properly executing the "go around", having made the two right turns, and was proceeding along the downwind leg when the Mazza airplane improperly entered the flight pattern and struck the Rerat airplane. The administrator for Mazza claimed, in all of the actions, that Rerat had executed an improper go around and, rather than making two right turns, had crossed over the airfield, while gaining altitude, and had collided with the Mazza airplane after coming up from behind and under it. The evidence showed that Mazza had failed, or was unable, to make contact with the control tower when he reached the downwind leg. Eyewitnesses and experts testified for both sides in support of their respective versions. The evidence was closely disputed and the versions of the crash which developed at the trial were diametrically opposed. The jury was instructed to return special verdicts on the questions of negligence and proximate cause as to each of the parties cast as defendants. With respect to contributory negligence, the court charged the jury that each pilot was required to exercise the appropriate degree of care, under all the circumstances. It further charged that a failure to exercise such care would not constitute contributory negligence unless it was the proximate cause of the collision. This charge, to which no exception was taken, was consistent with the court's instruction that the jury return special verdicts on negligence and proximate cause. The jury found that there was negligence on the part of both Rerat and Mazza and in the operation of the airport control tower. However, the jury concluded that only the negligent acts of Rerat and the tower were the proximate causes of the crash; liability was apportioned between them. The adversely affected parties moved, pursuant to CPLR 4404, to set aside the jury's verdict. The trial court granted the motions and directed a new trial, stating that "Mazza could not have been negligent in his operation and control of his aircraft without that negligence being a true proximate cause of the tragedy." We disagree with the trial court's decision to set aside the jury's verdict. It is axiomatic that "Evidence of negligence is not enough by itself to establish liability. It must also be proved that the negligence was the cause of the event which produced the harm sustained by one who brings the complaint" *(Sheehan v City of New York,* 40 NY2d 496, 501). This case involved many close factual questions,

particularly concerning the issue of proximate cause. The eyewitnesses and expert witnesses for each party sharply disagreed with each other. In the light of the evidence adduced, the jury could have correctly concluded that Rerat had negligently executed the go around and that such negligence, and the negligence of the tower, were the proximate causes of the accident. It could also properly have concluded that Mazza had acted in a negligent manner, but that his negligence was not a proximate cause of the collision. The jury's verdict should not have been disturbed unless the evidence so preponderated in the moving parties' favor that the part of the verdict against them could not have been reached on any fair interpretation of the evidence (see *Olsen v Chase Manhattan Bank,* 10 AD2d 539, affd 9 NY2d 829). Gulotta, J. P., Margett and Hawkins, JJ., concur; Cohalan, J., concurs in part and dissents in part, with the following memorandum: As to the actions entitled Lee v Flight Safety (Action Nos. 1, 2, 8), I find no fault with the verdict that Walter Rerat was contributorily negligent and that his negligence was a proximate cause of the accident. I concur with the majority in reinstating the verdict of the jury in those actions. As to Action No. 3 (Mazza v Lee), I agree with the Trial Justice in his statement that "Mazza could not have been negligent in his operation and control of his aircraft without that negligence being a true proximate cause of the tragedy." It is important to note that the Rerat airplane (an Aztec) had the right of way. It reached the airport ahead of the Mazza airplane (a Cherokee); it received instructions to make a rectangular "go around" while another airplane cleared the runway; and it was while making the "go around" that the collision occurred. At all times prior to the collision, Rerat was to the right of the Mazza airplane. Mazza, on the other hand, was instructed by the control tower to report to the National Cemetery area, presumably to await further instructions. But when he reached the indicated area, Mazza did not make further contact with the tower. Instead, he entered the landing flight pattern on Rerat's left. He was, in effect, flying blind. If he had not been so impatient, and had communicated with the tower for further instructions, the tragedy would have been averted. The jury recognized that Mazza was negligent when it so reported in its verdict. However, it went further to say that his negligence was not a proximate cause of the collision. This prompts the obvious question, "at what point did he cease to be negligent?" I cannot blink the fact that his negligence, even if minimal, constituted contributory negligence in his "plaintiff's" case and this should have turned him out of court. Thus, as to the case of Mazza, as of plaintiff, I would affirm the order since the verdict was contrary to the weight of the credible evidence.