■ CHRISTOPHER G. SNYDER, Respondent, v JAC KRAMER et al., Appellants, et al., Defendants. — Appeal from a judgment of the Supreme Court in favor of plaintiff, entered February 10, 1982 in Ulster County, upon a verdict rendered at Trial Term (Conway, J.). The instant personal injury action arises out of an accident which occurred October 29, 1978, when plaintiff was seriously injured in a fall from a horse owned by defendant Jac Kramer. There was evidence introduced from which the jury could have found the following facts: defendants Kramer and Robert Seaman were the principal stockholders and employees of defendant Rawhide Ranch, Inc. (the ranch) which operated a children's ranch camp in which horseback riding was a major activity. The evening preceding the accident, plaintiff met socially with Kramer, defendant Bridget Sweeney and two other persons, and it was agreed that all those present would participate in moving five horses used in the operation of the ranch from one pasturage location to another, a distance of several miles. Among the horses to be moved was "Chug", a barrel racing horse owned by Kramer and known by both plaintiff and the operators of the ranch to be highstrung, very quick and dangerous to anyone but an experienced rider. Kramer also assured those present that he would furnish sufficient saddles for the task. The next morning, when the riding party assembled, Kramer only had two saddles. As a more experienced rider with some familiarity with one of the horses, plaintiff offered to ride that horse without a saddle. Kramer assigned Chug to Bridget Sweeney to ride. Knowing her lack of riding experience, however, Kramer told her to stay close to plaintiff's horse and to keep Chug at a walk. The party mounted the horses and proceeded toward their destination, but stopped after 15 or 20 minutes to permit one of the other riders, who was also riding bareback, to switch to a saddled horse. At that point, Chug moved away from plaintiff, went into an extended trot and began to pick up speed. Plaintiff concluded that Sweeney had lost control of the horse, and he galloped in pursuit to assist her in subduing it. While attempting to do so, however, his own horse slipped on the pavement, and he fell off, striking his head on the pavement. The foregoing facts, in our view, were sufficient to establish actionable negligence on the part of Kramer and the ranch, and justify Trial Term in dismissing all claims against Sweeney and in imputing Kramer's negligence to the ranch on the basis of *respondeat superior*. Uncontestably, the horses were employed in the operation of the ranch's business, and the activities which led to the accident were in furtherance thereof. Thus, the bailment of the horses to Sweeney and plaintiff was not merely gratuitous. Therefore, the general rules of negligence with respect to suppliers of chattels applied (Prosser, Torts [4th ed], § 104, p 677, 1 Frumer & Friedman, Products Liability, § 5.03[4], subd [a]). The jury reasonably could have concluded that defendants were negligent in furnishing to Sweeney, an inexperienced rider, a horse which they knew or ought to have known endangered her safety or that of others (*Mirabella v Thiem*, 306 NY 650; *Page v Nassau Riding Academy*, 254

App Div 573 [synopsis, 2 NYS2d 742]; cf. *Varriale v Sunnybrook Acres,* 37 AD2d 603; *Roots v Claremont Riding Academy,* 20 AD2d 536, affd 14 NY2d 827; Liability of Owner or Bailor of Horse for Injury by Horse to Hirer or Bailee Thereof, Ann., 6 ALR4th 358). Moreover, the supplier of a chattel to another whom the supplier knows or should know is likely, because of inexperience, to use it in an unsafe manner, is liable for physical harm resulting therefrom (Restatement, Torts 2d, § 390). There seems to be little doubt that a saddle is employed to enhance the safety and stability of the rider in horseback riding. A supplier of a chattel, including a bailer who supplied the chattel for his own business purpose, owes a duty to exercise reasonable care to make the chattel safe for the intended use (Restatement, Torts 2d, § 392; see, also, *Galbraith v Pike & Son,* 18 AD2d 39, 43-44). This may include the furnishing of safety devices to avoid an unreasonable risk of harm when the chattel is used in the manner for which it was intended, as well as an unintended yet reasonably foreseeable use (see *Micallef v Miehle Co., Div. of Miehle-Goss Dexter,* 39 NY2d 376, 385-386). Clearly here, defendants could have anticipated that, if Sweeney dangerously lost control of her horse (or plaintiff reasonably perceived this to be the case), plaintiff would have ridden to her assistance. Since Kramer himself told Sweeney to keep her horse at a walk and to stay close to plaintiff, plaintiff's version of what happened presented more than a mere suspicion that she was endangered. Therefore, the rescue doctrine applied and was properly submitted to the jury (*Provenzo v Sam,* 23 NY2d 256, 260-261; *Wagner v International Ry. Co.,* 232 NY 176). We are also of the view that if the jury concluded that defendants were negligent in furnishing Sweeney with a horse whose dangerous propensities were beyond her capabilities and also in failing to furnish plaintiff a horse with a saddle, the relationship between those acts and omissions and plaintiff's fall and resultant injuries was not so attenuated as to preclude the jury from further finding in favor of plaintiff on the proximate cause issue (cf. *Luce v Hartman,* 6 NY2d 786; *Lee v Flight Safety,* 63 AD2d 994; *Sherman v Concourse Realty Corp.,* 47 AD2d 134). We have examined defendants' remaining assignments of error and find them equally unpersuasive. Accordingly, the judgment should be affirmed in all respects. Judgment affirmed, with costs to plaintiff against defendants Rawhide Ranch, Inc., and Jac Kramer. Sweeney, J, P., Mikoll and Levine, JJ., concur.

Main and Casey, JJ., dissent and vote to reverse in the following memorandum by Casey, J. Casey, J. (dissenting). In our view, there has been no showing of any negligence whatever on defendant Kramer's part and, therefore, as a matter of law, the judgment against him and Rawhide Ranch,'whose agent he is, should be reversed and the complaint dismissed. Accordingly, we dissent. On this appeal, plaintiff advances two theories in support of his judgment. First, he argues that the negligence of Kramer consisted in failing to provide plaintiff with a saddle for "Trebor", the horse which plaintiff was assigned to ride and which was owned by defendant Seaman. However, plaintiff's injuries occurred when this horse slipped on a macadam road and fell, whether in pursuit of Sweeney or not. There is no proof how a saddle could have prevented the fall which was the proximate cause of the accident, or that plaintiff, an experienced rider, requested and was refused the use of a saddle. Nor is there any proof that Trebor was known to Kramer to possess a dangerous propensity for falling or for running away, prior to the accident. We can find, therefore, on these facts no merit to plaintiff's argument that there was negligence on the part of Kramer, in his failure to provide a saddle, which contributed to plaintiff's fall. Secondly, plaintiff urges that Kramer was negligent in permitting Sweeney to ride Chug. Again, it has not been shown that Chug possessed any vicious propensity or unusual trait known to Kramer when he assigned

Sweeney to ride him, or that any unusual trait or propensity of the horse, whether known to Kramer or not, caused plaintiff's fall, and Sweeney was absolved of fault in her riding by the trial court, as a matter of law. The mere act of Chug's trotting, the middle recognized gait of any horse, was certainly not caused by Kramer in any way, or shown to have been so dangerous as to invite a rescue attempt by plaintiff, and if rescue was his purpose in chasing Chug, he acted entirely at his own risk. In order to apply the doctrine that danger invites rescue so as to make Kramer and the ranch liable, it must appear that Kramer was negligent in placing Sweeney in a position of imminent peril, which invited plaintiff to come to Sweeney's aid (*Rucker v Andress*, 38 AD2d 684, 685), and there is simply no proof that Kramer negligently caused or contributed to the actions of Sweeney's horse or that this horse's trot was so perilous to Sweeney as to invite plaintiff's rescue attempt. It seems to us that plaintiff's two theories of negligence must be considered separately, as was attempted above. In our opinion, it is unreasonable to consider both theories together and to find negligence on Kramer's part for giving plaintiff a horse (Trebor) that would be unsuitable for a rescue attempt which should be foreseeable because Sweeney was riding alongside plaintiff on a horse named Chug that might go into an extended trot thereby inviting a rescue. This seems to us to be the rationale of the majority and we cannot agree with it. Accordingly, we believe the judgment should be reversed and the complaint dismissed.