27 F.3d 567
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Nona M. MISHLER, Administratrix of the Estate of Henry C.
Mishler, and Nona M. Mishler, Individually,
Plaintiff-Appellant,
v.
Darrell COLEMAN and Leah Coleman, Defendants-Appellees.
 No. 93-5286.
 United States Court of Appeals, Sixth Circuit.
 June 14, 1994.
 
 Before: JONES, NORRIS, and DAUGHTREY, Circuit Judges.
 PER CURIAM.
 
 
 1
 In this wrongful death action, the plaintiff appeals the district court's order of summary judgment in favor of the defendants, contending that the matter should have been sent to a jury on the theory of negligent entrustment. We conclude that the decision of the district court is fully supported by the record and affirm.
 
 
 2
 The complaint filed in this case set out two causes of action, one for negligence and the other for negligent entrustment. The negligence theory has since been abandoned, and we are concerned on appeal only with the claim for negligent entrustment, based on the Restatement (Second) of Torts Sec. 390. That section provides:
 
 
 3
 One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.
 
 
 4
 The plaintiff, Nona Mishler, brought this action in her individual capacity, as the wife of the decedent, her husband, Henry Mishler, and in her capacity as the administrator of the decedent's estate. At the time of his death, Henry Mishler was a middle-aged businessman who lived in Florida and was visiting the Coleman family in Kentucky. The defendants, Darrell and Leah Coleman, are a father and daughter who owned the horse from which Henry Mishler fell, causing his death. Darrell had bought the horse as a gift for Leah when she was nine years old (she was 15 at the time of the events described below). Leah rode the horse frequently. The horse, "Beauty," was a standard-bred mare, 11 years old at the time of the incident. Henry Mishler and Darrell Coleman had both grown up together in Iowa and had been friends since childhood. The two families visited each other from time to time.
 
 
 5
 On this occasion, in April 1991, the Colemans and the Mishlers had attended church together. After they finished Sunday dinner, Leah went to get Beauty and rode the horse bareback to the house to feed her. It was not uncommon for Beauty to be ridden bareback. In passing, Leah asked if anyone wished to go for a ride. Having previously ridden Beauty without incident, Henry Mishler accepted Leah's invitation but declined both Leah's and Darrell's offers of a saddle. Instead he requested a saddle blanket, to keep his clothes from getting soiled. After some initial difficulty mounting the horse bareback, Mishler rode across the front yard and turned around without incident. On the way back, however, he dropped one of the reins, which were not tied together. When Mishler leaned forward in an attempt to retrieve the dropped rein, the horse went into a slow gallop and the blanket began to slip. Mishler fell off the horse, suffering head injuries from which he died a few days later.
 
 
 6
 No one before or since this incident had been injured while riding Beauty, although the Mishlers' daughter testified that Beauty had behaved erratically on one occasion while she was riding the horse. The district court determined, based on evidence in the record, that Henry Mishler was a competent, though not expert, horseman and that the Colemans reasonably believed him to be a capable rider. The plaintiff concedes that Mishler had ridden on at least two prior occasions (not including his first uneventful ride on Beauty).
 
 
 7
 As is appropriate in a diversity case, pursuant to Erie Railroad v. Tompkins, 304 U.S. 64 (1938), the district court applied the substantive law of Kentucky and found that it was silent as to whether the definition of chattel under Restatement (Second) of Torts Sec. 390 includes horses. Accordingly, the court set out to find the path that the Kentucky courts would follow were they to decide the issue themselves, Overstreet v. Norden Lab, 669 F.2d 1286, 1289-90 (6th Cir.1982), and concluded that "[i]t cannot be said with certainty that Kentucky would extend this theory to include the owners of domestic animals."
 
 
 8
 The District court reached this conclusion by analyzing Kentucky precedent in regard to negligence claims against horse owners. Under Kentucky law, a horse owner may be liable only if the plaintiff can prove that: (a) the horse possessed dangerous and vicious propensities; (2) the horse was inclined to commit an injury of the class complained of; and (3) the owner knew of the horse's dangerous propensities Ewing v. Prince, 425 S.W.2d 732, 733 (Ky.1968). See also North Hardin Developers v. Corkran, 839 S.W.2d 258, 261 (Ky.1992) (absent history of dangerous propensities, domesticated livestock do not constitute a foreseeable risk of harm). The court found that the Ewing standard embodied an implicit "policy of protecting horse owners." Consequently, the court stated, "Kentucky's high court might well refuse to impose negligent entrustment liability--might refuse, in short, to declare that a horse could be 'use[d] in a manner involving unreasonable risk to physical harm'--absent proof that the particular horse exhibited the sort of 'dangerous propensities' required by Ewing...."
 
 
 9
 The district court further held that, even assuming Kentucky would extend the doctrine of negligent entrustment to horses, the plaintiff had nonetheless failed to sufficiently establish such a cause of action. The court found that the plaintiff had not proven that the decedent was incompetent to use the chattel safely or that the supplier of the chattel knew or had reason to know of the probable misuse of the chattel due to the inexperience of the person to whom the chattel was furnished, both elements of negligent entrustment under Kentucky law.
 
 
 10
 On appeal, the plaintiff first argues that the district court improperly relied on Ewing and North Hardin Developers, because these are negligence, rather than negligent entrustment, cases. But, obviously, the court did not rely on these cases as directly controlling precedent. Rather, the district judge merely cited them as evidence of Kentucky's general reluctance to impose liability on horse owners. In the course of doing so, the court expressly acknowledged that the cases involved negligence, rather than negligent entrustment, claims.
 
 
 11
 The plaintiff does direct us to four cases from other jurisdictions in which the courts have applied Sec. 390 to horses or have permitted recovery of damages for horse-related accidents. Although these cases are not directly relevant to the question of whether Kentucky would extend Sec. 390 to horses, the application of the doctrine of negligent entrustment to horses by other states might be taken to indicate that Kentucky would do the same. In each instance however, the facts of the case cited by the plaintiff are of limited persuasive effect because of substantial dissimilarities with the law and the facts in this case.
 
 
 12
 The plaintiff relies primarily on Dee v. Parish, 327 S.W.2d 449 (Tex.1959), in which the Supreme Court of Texas held the owner of a stable liable under Sec. 390 for allowing a 12-year-old, whom the defendant knew to be inexperienced, to ride off the premises into a rought area, where she was injured. Dee, however, is factually distinguishable from the instant case. Most significantly, the Dee court focused on the age and judgment of the injured party, a 12-year-old child. Id. at 451-52. Here, the decedent was a 45-year-old businessman with prior riding experience.
 
 
 13
 The plaintiff next quotes language from Synder v. Kramer, 463 N.Y.S.2d 591, 593 (A.D. 3 Dept.1983), to the effect that jurors "reasonably could have concluded that defendants were negligent in furnishing to ... an inexperienced rider ... a horse which they knew or ought to have known endangered her safety or that of others." Synder is likewise distinguishable, first, because the language quoted does not refer to Sec. 390. Moreover, the horse in Synder was known to be "highstrung, very quick and dangerous...." Id. Third, the Synder court characterized the defendant as "a bailor who supplied the chattel for his own business purpose...." Id.
 
 
 14
 The plaintiff also quotes language from State Farm Mutual Auto. Insur. Co. v. Shoaf, 446 N.E.2d 824, 827 (Ohio App.1982), in which the court held the defendant liable under Sec. 390 for
 
 
 15
 entrusting her horse to an inexperienced rider in an open area behind an apartment complex which abutted a busy street. Under these circumstances, [the] defendant ... should reasonably anticipate an inexperienced rider's losing control of the horse, with the resultant dangers to others if the horse ran out onto the road (emphasis added).
 
 
 16
 As the emphasized language makes clear, the holding in Shoaf is limited to the facts of that particular case. The owner's liability rested primarily on the fact that she entrusted her horse to a rider whom she knew to be inexperienced, in a crowded residential area without fences and near streets with busy traffic. Id. at 826. Additionally, as the plaintiff here concedes, liability in Shoaf was predicated on negligence, not negligent entrustment. Id. Furthermore, the Shoaf court also found the rider of the horse negligent. Id. at 827.
 
 
 17
 Lastly, the plaintiff cites Dolezal v. Carbrey, 778 P.2d 1261, 1266 (Ariz.App.1989), which held that whether the bolting of an otherwise gentle horse was foreseeable and whether the horse's owner improperly let an inexperienced rider on the horse, inadequately instructed her, and insufficiently supervised her ride and dismount, were questions of fact precluding summary judgment. However, the plaintiff concedes that Dolezal is not dispositive because it, too, was brought on the theory of negligence, rather than negligent entrustment. Further, Dolezal is factually inapposite from the instant appeal. Here, the decedent rode Beauty at least once without incident, while the injured party in Dolezal informed the defendant that she was an inexperienced rider shortly before she was injured. Here, the decedent declined the offer of a saddle, while, in Dolezal, "[e]xpert testimony indicated that ... [the injured party] did not know enough about riding horses to know what questions to ask [defendant] concerning properly mounting, riding and dismounting a horse." Id.
 
 
 18
 Given the relative paucity of cases in which the Restatement (Second) of Torts Sec. 390 has been applied to the negligent entrustment of horses to an arguably capable rider, and given the rather stringent standard Kentucky courts have applied in negligence cases involving horse-related injuries, we cannot say that the district court's reluctance to extend the reach of Sec. 390 to the facts of this case was erroneous. Indeed, Kentucky has been described by its own high court as "the home of the Thoroughbred, the breeding ground of horses famous for speed, spirit and show, ... where the horse is king...." Prince v. Ewing, supra, 425 S.W.2d at 733.
 
 
 19
 Moreover, we conclude that it is unnecessary to second-guess the Kentucky courts concerning the applicability of Sec. 390 to horses, because we find, as did the court below, that even if the theory of negligent entrustment is applicable here, the record precludes recovery by the plaintiff. The plaintiff has demonstrated on the record a loss that is obviously tragic. What she has failed to present is evidence of significant probative value sufficient to defeat the defendants' motion for summary judgment. See generally Anderson v. Liberty Lobby, 477 U.S. 242, 249-50 (1986). The focus of a summary judgment inquiry is whether the evidence presented by the party bearing the burden of proof creates a jury question as to each element of the case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Here, at the very least, Darrell Coleman's long-time familiarity with his friend, Henry Mishler, as well as Mishler's prior non-eventful ride on Beauty, gave the Colemans reason to believe that Mishler was capable of riding Beauty without being harmed. Accordingly, it is impossible to see how the plaintiff could prove that the defendants knew or should have known of the probable misuse of the chattel by reason of the incompetence of the person to whom the chattel was furnished, an essential element of negligent entrustment under Kentucky law. See Hercules Powder Co. v. Hicks, 453 S.W.2d 583, 587 (Ky.1970).
 
 
 20
 We AFFIRM the order of summary judgment entered by the district court.