◼ CORNELIUS J. O'CONNOR JR., Appellant, v SYRACUSE UNIVERSITY et al., Respondents. [887 NYS2d 353]—

**2.** One of these periods of imprisonment was as the result of respondent stabbing the children's mother with a knife.

McCarthy, J. Appeal from an order of the Supreme Court (Platkin, J.), entered October 7, 2008 in Albany County, which, among other things, granted defendants' motions for summary judgment dismissing the complaint.

This personal injury action arose from an altercation at a hockey game between defendant Syracuse University and defendant Slippery Rock University of Pennsylvania, initially involving defendant Matthew DiSanti, a Slippery Rock player, and defendant Brian McNeil, a spectator, which swiftly escalated, resulting in injury to plaintiff when he attempted to extricate McNeil from the fracas. Plaintiff commenced this action against defendants* alleging negligence on the part of DiSanti and McNeil, and negligence/negligent supervision on the part of Syracuse University. Supreme Court denied plaintiff's cross motion—joined by McNeil—to strike the answer of Syracuse University for its alleged failure to turn over a witness statement and granted defendants' motions for summary judgment dismissing the complaint. The court held that plaintiff failed to present a factual issue as to the breach of any duty by defendants and that the rescue doctrine did not apply to absolve plaintiff of the risk he assumed in voluntarily coming to the aid of McNeil. This appeal by plaintiff ensued.

The game was held at Syracuse University's Tennity Ice Pavilion. Plaintiff, the father of one of the Syracuse University players, watched the conclusion of the game from an area near where the teams would exit the ice. Along the pathway from the ice to the respective team locker rooms, portable barriers separated spectators from the teams. After the game, the Slippery Rock team exited the ice and was lined up along the barrier leading to the visiting team locker room as they waited for it to be opened. Plaintiff was on the spectator side of the barrier, speaking with the Slippery Rock players, when he heard

---

* The action was discontinued as to Slippery Rock by stipulation dated November 13, 2006.

DiSanti yell at McNeil. Seconds later, McNeil appeared at the barrier next to plaintiff and engaged in a physical altercation with DiSanti. When plaintiff saw DiSanti grab McNeil and pull him across the barrier, he immediately grabbed McNeil around the waist in an attempt to pull him "away from the situation." Instead, plaintiff was pulled across the barrier with McNeil, where they landed on the floor while several Slippery Rock players piled on and continued to strike McNeil. McNeil, relatively unscathed, was quickly pulled out of the pile by a fire safety officer, but plaintiff suffered a fractured ankle and shin bone as the altercation was broken up.

We have no difficulty agreeing with Supreme Court that the evidence before it raised no factual issue regarding the breach of any duty by Syracuse University. Syracuse University owed spectators, including plaintiff, a duty of reasonable care under the circumstances to maintain safe conditions at the hockey game, including a duty to minimize foreseeable danger arising from the criminal acts of third parties (*see Maheshwari v City of New York*, 2 NY3d 288, 294 [2004]). The scope of that duty is defined according to the likelihood that such behavior will occur and endanger spectators based on past experience, and no duty is imposed to protect patrons against unforeseeable and unexpected assaults (*see id.; Stafford v 6 Crannel St.*, 304 AD2d 997, 998 [2003]).

Pursuant to written policy governing events at the pavilion, barriers separating the teams from the spectators were in place and a uniformed public safety officer and a fire safety inspector were stationed within the barriers to discourage any inappropriate behavior on the part of spectators or players leaving the ice. Such precautions were employed even though there had never been a physical confrontation between a spectator and a hockey player in the facility's history. The sudden and violent confrontation between McNeil and DiSanti was not preceded by escalating hostilities that might otherwise have served to put Syracuse University personnel on notice of a possible skirmish (*compare Ash v Fern*, 295 AD2d 869 [2002]). The spontaneous confrontation that resulted in plaintiff's injuries lasted only moments before it was ended by Syracuse University personnel posted nearby.

As to plaintiff's claim that defendant failed to realize that spectators were drinking alcohol, the record reveals that a "no alcohol" policy was posted and enforced at the Tennity Ice Pavilion. While enforcement may not have been perfect, plaintiff's evidence that beer cans may have been found in a garbage can near the area where McNeil had watched the game was hearsay

and, by itself, does not raise a triable issue as to the foreseeability of the confrontation between McNeil and the Slippery Rock players (*see Stevens v Spec, Inc.*, 224 AD2d 811, 813 [1996]). McNeil admitted to drinking several beers prior to the game, but testified that he did not consume any alcohol at the game, and the evidence presented does not even suggest that McNeil's conduct prior to the altercation should have attracted the attention of Syracuse University personnel. Although the game may have been hard fought and the Slippery Rock players upset after a significant loss, Syracuse University's policies and practices and the actions of its personnel were reasonable under the circumstances (*see Maheshwari v City of New York*, 2 NY3d at 295). Accordingly, the claims against Syracuse University were properly dismissed.

We reach a different conclusion, however, regarding the dismissal of plaintiff's claims against DiSanti and McNeil. Both defendants argued that they owed no duty to plaintiff and that plaintiff assumed the risk of injury when he voluntarily came to the aid of McNeil. Plaintiff, in response, invoked the "danger invites rescue" doctrine (*see Wagner v International Ry. Co.*, 232 NY 176, 180 [1921]), which Supreme Court found inapplicable because, in the court's view, the record evidence did not support a reasonable belief that McNeil was in imminent peril of serious injury. We disagree.

Initially, we note that Supreme Court properly disregarded unauthorized surreply papers and an affirmation by plaintiff's attorney intended to clarify plaintiff's motivation for attempting to restrain McNeil (*see* CPLR 2214; *Matter of Kushaqua Estates v Bonded Concrete*, 215 AD2d 993, 994 [1995]; *Fallsburg Fishing & Boating Club, Inc. v Spiegel*, 9 AD3d 765, 766 [2004]). However, the record evidence nevertheless supports a logical inference that plaintiff, in attempting to restrain McNeil, was motivated by a reasonable belief of imminent peril warranting application of the danger invites rescue doctrine.

Plaintiff acted swiftly and spontaneously in grabbing McNeil, a stranger to plaintiff, around the waist to keep him from being pulled across the barrier into a line of potentially hostile hockey players. Plaintiff testified at his examination before trial that approximately 15 Slippery Rock players were lined up, waiting to enter the locker room, when the incident occurred. Although he did not hear the full exchange between DiSanti and McNeil, he saw DiSanti punch and pull McNeil. When asked why he tried to grab McNeil, plaintiff testified, "Well, he was being pulled towards—across the barrier to these [Slippery Rock] players and I thought I could grab him and pull him the other

way, keep him away from the situation." It is a logical inference that the "situation" plaintiff referred to was the immediate danger of serious injury posed where one university student, who was a mere spectator and not a participant in the collegiate hockey game that preceded these events, is being pulled into a physical confrontation with a group of hockey players, fresh off the ice from a emotionally packed defeat and fully suited with protective gear, skates and hockey sticks.

For the danger invites rescue doctrine to apply, it is sufficient that plaintiff held a reasonable belief of imminent peril of serious injury to another, and it matters not that the peril feared did not materialize (*see Provenzo v Sam*, 23 NY2d 256, 260 [1968]; *Gifford v Haller*, 273 AD2d 751, 752 [2000]). Plaintiff witnessed a tense hockey game and saw a member of the defeated team, in full gear with teammates standing close by, punch a student spectator. Plaintiff jumped to the aid of this stranger an instant before several other hockey players joined in the attack that resulted in plaintiff's ankle and shin bone being fractured. Plaintiff had "more than a mere suspicion" that McNeil was endangered (*Snyder v Kramer*, 94 AD2d 860, 861 [1983]). The instant facts stand in stark contrast to a schoolhouse fight between eighth-graders where a fear of serious injury might be unreasonable (*compare Ha-Sidi v South Country Cent. School Dist.*, 148 AD2d 580, 581-582 [1989]). Whether plaintiff acted reasonably under the circumstances such that he will not be deemed to have assumed the risk in attempting rescue is a question for the trier of fact (*see Provenzo v Sam*, 23 NY2d at 261; *Wagner v International Ry. Co.*, 232 NY at 181; *Gifford v Haller*, 273 AD2d at 753).

Turning to plaintiff's cross motion pursuant to CPLR 3126 for sanctions against Syracuse University for failing to produce a statement allegedly submitted to its officials by an eyewitness to the altercation, it cannot be said that Supreme Court abused its discretion in denying the motion. The law is settled in favor of resolving actions on the merits whenever possible, and the drastic remedy of striking a pleading is appropriate only where the moving party conclusively demonstrates bad faith or willful, contumacious conduct by the nondisclosing party (*see Cafferty v Thomas, Collison & Place*, 282 AD2d 959, 961 [2001]). The parties submitted conflicting evidence as to whether the witness statement at issue ever existed, and Syracuse University conducted a thorough, though unsuccessful, search of its records for any such statement. Moreover, plaintiff failed to demonstrate any prejudice, inasmuch as the witness remains willing and available to testify at trial as to her recollection of the event.

Rose, J.P., Stein and Garry, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as granted the motions of defendants Brian McNeil and Matthew DiSanti for summary judgment; said motions denied; and, as so modified, affirmed. [*See* 21 Misc 3d 1106(A), 2008 NY Slip Op 51983(U).]