Catterson and Acosta, JJ.,
dissent in a memorandum by Catterson, J., as follows: Because I believe that there is no material issue of fact on the issue of bailment, I respectfully dissent and would grant summary judgment to defendant Beys.
A brief review of the law of bailments is necessary to a resolution of this case because the majority has not set forth any principles of bailments that would control the outcome of this dispute. “As this Court stated in Martin v Briggs (235 AD2d 192, 197): ‘A “[b]ailment does not necessarily and always, though generally, depend upon a contractual relation. It is the element of lawful possession, however created, and duty to account for the thing as the property of another that creates the bailment, regardless of whether such possession is based on contract in the ordinary sense or not.” (Foulke v New York Consolidated R.R. Co., 228 NY 269, 275.) A bailment “may arise from the bare fact of the thing coming into the actual possession and control of a person fortuitously, or by mistake as to the duty ' or ability of the recipient to effect the purpose contemplated by the absolute owner.” (Phelps v People, 72 NY 334, 358.) A bailment “may be created by operation of law. It is the element of lawful possession, and the duty to account for the thing as the property of another, that creates the bailment, whether such possession results from contract or is otherwise lawfully obtained. It makes no difference whether the thing be intrusted to a person by the owner or by another. Taking lawful possession without present intent to appropriate creates a bailment.” ’ ” (Pivar v Graduate School of Figurative Art of N.Y. Academy of Art, 290 AD2d 212, 212-213 [1st Dept 2002].)
It is beyond dispute that “[a] gratuitous bailment is, by definition, the transfer of possession or use of property without compensation.” (Fili v Matson Motors, 183 AD2d 324, 328 [4th Dept 1992]; see also Leventritt v Sotheby’s, Inc., 5 AD3d 225 [1st Dept 2004].)
A bailment for hire for the mutual benefit of both parties, on the other hand, requires the same transfer of possession or use *408 of property, but either payment by the bailor to the bailee or a tangible benefit conferred upon both parties by nature of the bailment itself. (Fili, 183 AD2d at 328-329; see e.g. Mack v Davidson, 55 AD2d 1027 [4th Dept 1977]; Jays Creations v Hertz Corp., 42 AD2d 534 [1st Dept 1973].)
In the instant case, plaintiff contends, and the majority accepts the premise, that the defendant Beys, as bailor, may be liable to plaintiff, as bailee, for an injury sustained by plaintiff while using the very article that was the subject of the bailment. In my view, this theory conflates the duty of care imposed on the bailee with respect to the chattel bailed, with that of the duty of the bailor to third parties to create a theory of liability on the bailor for personal injury to the bailee.
In a gratuitous bailment, the bailee is only liable to the bailor for the bailee’s “gross or wanton negligence.” (Linares v Edison Parking, 97 Misc 2d 831, 832 [Civ Ct, NY County 1979].) This is normally applied to the bailee’s conduct concerning the bailed chattel itself. I could find no authority for the proposition that the bailor owes a bailee any concomitant duty in a gratuitous bailment, but for a duty to warn of known defects that were not readily discernable. (Acampora v Acampora, 194 AD2d 757 [2d Dept 1993], lv denied 82 NY2d 664 [1994].)
In a bailment for hire for the mutual benefit of both bailor and bailee, the Third Department has held that the bailor “who supplied the chattel for his own business purpose[ ] owes a duty to exercise reasonable care to make the chattel safe for the intended use.” (Snyder v Kramer, 94 AD2d 860, 861 [3d Dept 1983]; see Dufur v Lavin, 101 AD2d 319 [3d Dept 1984], affd 65 NY2d 830 [1985].) Initially, it should be noted that no other Department has articulated this standard vis-a-vis the bailor’s duty to the bailee. The standard of reasonable care running from bailor to bailee articulated in Snyder and Dufur seems to be derived from the line of cases imposing such a duty on a bailor with respect to third parties, or a commercial lessor “in the business of placing products into the stream of commerce.” (Winckel v Atlantic Rentals & Sales, 159 AD2d 124, 129 [2d Dept 1990].) Neither scenario is presented here.
In my view, Beys at best was either a gratuitous bailor or a casual lessor of the grinder. As such, while Beys could only be “liable for ordinary negligence on a theory of failure to warn, ‘[a]t most, the duty of a casual or occasional seller [or lessor] would be to warn the person to whom the product is supplied of known defects that are not obvious or readily discernable.’ ” (Burns v Haines Equip., 284 AD2d 922, 923 [4th Dept 2001], quoting Sukljian v Ross & Son Co., 69 NY2d 89, 97 [1986] [no *409 liability where safety guard obviously removed from loading machine]; see also Ruggiero v Braun & Sons, 141 AD2d 528 [2d Dept 1988], lv denied 73 NY2d 707 [1989] [no liability where safety guard removed from meat grinder, danger was patent]; Sofia v Carlucci, 122 AD2d 263 [2d Dept 1986] [no liability where absence of safety railings was patent].)
Consistent with the above precedent is the principle that there is no duty to warn where “the injured party is already aware of the specific hazard.” (Yong Hwan Chae v Lee Natl. Corp., 261 AD2d 240, 240 [1st Dept 1999] [internal quotation marks omitted].)
Plaintiff testified that he was fully aware that the grinder was missing its original safety guard at the time he received it from Beys. Indeed, this case is factually indistinguishable from Ruggiero and Sofia, where the Second Department found no liability on behalf of the bailor. Thus, whether it is a gratuitous bailment or a casual lease of the grinder, Beys had no duty to warn plaintiff of the missing guard.
The majority’s contention that “[p]laintiff . . . was using the grinder to perform a task in furtherance of [the] project, which Beys and plaintiffs employer arguably had a common interest in seeing to completion,” simply has no support in the record but for plaintiffs counsel’s argument. An examination of the record citation behind plaintiffs position that Beys would suffer adverse financial consequences if plaintiff did not perform his own work using Beys’s grinder discloses only that the construction manager was responsible to coordinate the trades and “take the necessary measures to eliminate the circumstances which may lead to a delay.” Indeed, the record contains the contract between the owner and the construction manager, but no complete contract for Beys. Similarly, no one, including the majority, cites to any Beys contract provision which supports the novel proposition that Beys, as a subcontractor, was in some way united with all of the other subcontractors and the construction manager in “common interest.”
Finally, in attempting to distinguish Acampora and Ruggiero, because they did not involve a mutual benefit, the majority draws the wrong lesson from both cases. Both cases, as well as the remaining precedent cited above, stand for the proposition that without proof of record of a tangible financial benefit to the bailor from the bailment itself, the bailor’s duty is limited to the above described duty to warn. [Prior Case History: 2009 NY Slip Op 3129KU).]