Garland Joe HELTON and Joe
Risner, Appellants,

v.

Sue Risner MONTGOMERY, Administra-
trix of the Estate of Manford
Montgomery, Jr., Appellee.

Court of Appeals of Kentucky.

Feb. 22, 1980.

As Modified May 23, 1980.

Ronnie G. Dunnigan, Johnson, Dunnigan & Martin, Ashland, Clark Pratt, Hindman, for appellants.

Cordell H. Martin, Martin & Martin, Hindman, for appellee.

Before WHITE, LESTER and WILHOIT, JJ.

WHITE, Judge.

This appeal is from a jury award in the Magoffin Circuit Court for a wrongful-death action.

Appellee's nine-year-old son, Manford Montgomery, Jr., was fatally injured when he fell or jumped from the back of appellant Helton's moving pickup truck. Appellants Helton and Risner had been asked by a neighbor, Agnes Salyers, for assistance in starting her automobile. Taking Risner's jumper cables, they drove in Helton's pickup from Risner's to Mrs. Salyers' home. Helton, as driver, and Risner were in the cab; Mrs. Salyers and Risner's grandson, Lonnie Patrick, rode in the rear bed.

Circumstances surrounding the accident were vague; however, Lonnie testified that just as the truck was started up, young Montgomery attempted to jump onto the truck and was pulled aboard with his assistance. Subsequently, Manford perched on the tailgate, straddling it with one leg on either side. Shortly thereafter, the boy either fell or jumped from the truck as it passed before his home.

The accident was not witnessed. Both Lonnie and Mrs. Salyers indicated that they had been looking forward; when they turned back, Manford was on the ground. Helton and Risner each testified to being unaware of his presence. Although the truck had side-view mirrors to observe oncoming rear traffic, its rear window into the bed itself was obstructed by three large oil drums and a cattle rack. Thus, appellants were unable to have observed decedent's darting aboard the truck.

Appellants question whether the issue of negligence was sufficiently established to have precluded a directed verdict in their favor and whether appreciable evidence was received to have supported a jury instruction regarding joint venture.

For a discussion of the current interpretation of "joint venture" as applied in the field of automobile law, *see Huff v. Rosenberg*, Ky., 496 S.W.2d 352, 355 (1973). Cited with approval therein is *Wright v. Kinslow*, Ky., 264 S.W.2d 673, 676 (1954), which held that ". . . to constitute a joint enterprise there must be an equal right, express or implied, among all occupants of the car, to direct and control its operation." "In the absence of circumstances indicating such an understanding, it has been held that . . . although they may have a common purpose in the ride, [they] are not engaged in a joint enterprise." Prosser, *Torts*, 4th Edition, Chapter 12, Section 72.

Although Risner and Helton shared the common purpose of wishing to aid the neighbor, Mrs. Salyers, nothing in the evidence indicated that Risner was in any position to exert a right of control over the vehicle to the same extent as its owner-driver Helton. Consequently, it was error to allow jury consideration of the issue of "joint venture" in the absence of any evidential offer of probative value to support such a relationship.

Regarding the question of negligence, a directed verdict is to have been granted if the conduct of the appellants so conformed with the standard of what a reasonable man of ordinary prudence would have done under the circumstances that no reasonable juror could reach a contrary conclusion. It is a fundamental rule of tort liability that for negligence to be established there must have been (1) a duty owing decedent by appellants, (2) a breach of that duty which (3) was the proximate cause of the injuries which resulted in (4) damages. Negligence must be proven; it will never be presumed.

Concerning the duty owing, it is initially to be noted that except for the doctrine of attractive nuisance or dangerous instrumentality, a trespassing child is to be regarded as a trespassing adult, *i. e.* the

duty to exercise reasonable care arises only *after* discovering or receiving notice of his presence and possible peril. If, however, the doctrine of attractive nuisance obtains, the duty is to exercise ordinary care to *prevent* injury.

As outlined under *Restatement (Second) of Torts*, § 339 (1965), Dangerous Instrumentalities is a five-tiered recognition of society's interest in the welfare of the child:

(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

(c) the children because of their youth do not discover the condition or realize the risk involved in inter-meddling with it or coming within the area made dangerous by it, and

(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.

■■■ Applying this to the facts at hand, we are unable to state that the lower court erred in refusing to grant a directed verdict to appellant Helton. However, in view of the reasoning aforementioned, such was the proper course regarding appellant Risner.

The Court in *Hardin v. Harris*, Ky., 507 S.W.2d 172, 175–176 (1974), held that one has a duty of exercising ordinary care to avoid injury to children "known to be upon the premises at a place made dangerous by activities being conducted upon the premises." Although this dealt with real property, the same reasoning should extend to chattels.

1) Did Helton have a reasonable anticipation that children were in the area of his pickup? "If children are known to visit the general vicinity of the instrumentality, then the owner of the premises may reasonably anticipate that one of them will find his way to the exposed danger." *Clover Fork Coal Company v. Daniels*, Ky., 340 S.W.2d 210, 213 (1960). Throughout his testimony, Helton indicated his knowledge of the presence of children in the area of his truck, e. g. "The truck was sitting there at the mill and the children was there. I don't know what they was doing."

2) Did the pickup create an unreasonable risk of harm to children, and did Helton have knowledge of this? Previous cases have held that vehicles such as an ice or a milk truck are not attractive nuisances, thus relieving the drivers of a duty to have exercised ordinary care to have discovered a child's presence. *See Ice Delivery Co. v. Thomas*, 290 Ky. 230, 160 S.W.2d 605 (1942), and *Burkett v. Southern Belle Dairy Company*, Ky., 272 S.W.2d 661 (1954). However, regarding moving vehicles, each case is to be considered in view of its own particular facts with no set rules; reasonableness under the circumstances is the key. Accordingly, a truck in proper condition would not be an attractive nuisance, for although the vehicle may be alluring to a child, unreasonable dangers to him could not reasonably be anticipated by the owner. Here, however, the evidence is clear that the truck was not in proper condition in that appellant was aware of an obstruction to his rear vision into the bed of the truck, an obstruction which created a recognizable and unreasonable risk of harm to those children foreseeably within the area.

3) Could a child of nine be deemed not only to have been aware fully of the conditions surrounding the operation of the pickup but also to have appreciated the inherent risk of danger to him? Although case law has established that a child of fourteen is presumptively beyond the protection afforded by the tender-years element of the attractive nuisance doctrine [*Q. V. Bentley v. South-East Coal Company*, Ky., 334 S.W.2d 349 (1960)], the variables for application of the "tender-age presumption" for those less than fourteen require a case-by-case consideration; there can be no absolute

standards by which responsibility is to be judged. The gray areas primarily arise when dealing with youths in their early teen years, the period in which they gradually move towards the adult world. To seek to measure a bantling nine-year-old with an adult yardstick, however, rejects the indiscretion and childish impulses with which youngsters are irrefutably vested.

4) Should factors such as difficulties in safeguarding and social utility outweigh the enhanced potential for injury under the immediate circumstances? How is the task of shifting the oil drums to be gauged against dangers of continuing with obstructed vision?

5) Did Helton take all precautions which would be taken by a reasonable man under the circumstances?

In reviewing the duty owed under the doctrine of dangerous instrumentalities or attractive nuisance, it is undeniable that the above questions raise considerations appropriate for jury determination. The avenues of investigation suggested by each militate strongly in denial of a directed verdict on the issue of appellant Helton's negligence.

As relates to appellant Risner, the decision of the Magoffin Circuit Court is reversed and remanded with instructions to enter a judgment in his favor. Regarding appellant Helton, the decision of the Magoffin Circuit Court is affirmed.

All concur.