RENDERED:  AUGUST 26, 2022; 10:00 A.M.
TO BE PUBLISHED
MODIFIED:  OCTOBER 28, 2022; 10:00 A.M.

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0766-MR

JOI DENISE ROBY AND BLUE
CROSS BLUE SHIELD OF TEXAS                                          APPELLANTS

APPEAL FROM JEFFERSON CIRCUIT COURT
v.        HONORABLE JUDITH E. MCDONALD-BURKMAN, JUDGE
ACTION NO. 19-CI-001372

CHURCHILL DOWNS, INC.;
BRADLEY RACING STABLES, LLC;
KYLE MCGINTY; AND WILLIAM
"BUFF" BRADLEY                                                          APPELLEES

OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE:  CETRULO, LAMBERT, AND MCNEILL, JUDGES.

MCNEILL, JUDGE:  On May 5, 2018, Appellant, Joi Denise Roby (Roby), was at

Churchill Downs in Louisville, Kentucky, where the 2018 Kentucky Derby was

being hosted on that day.  She and her husband were guests of Appellee, Kyle

McGinty (McGinty), a licensed horse owner whose horses Roby claims were training with Appellees, William "Buff" Bradley (Bradley) and Bradley Racing Stables, LLC (Bradley Stables).[1] While Roby was walking through the stables located on the backside area of the Churchill Downs property, she was bit on the breast by a horse owned by Bradley, causing serious injuries. The horse was stabled pursuant to a "Stall Agreement" with Appellee Churchill Downs, Inc. (Churchill Downs).

As a result, Roby filed a negligence suit in Jefferson Circuit Court against Churchill Downs, Bradley, and Bradley Stables.[2] The latter two Appellees subsequently filed for summary judgment, which was granted. Churchill Downs also filed for summary judgment, which was denied. Upon a motion for reconsideration, however, the circuit court entered summary judgment in favor of Churchill Downs. Roby appeals to this Court from both summary judgment orders as a matter of right.

---

[1]  For simplicity, both will be collectively referred to as "Bradley."

[2]  According to Roby's notice of appeal, McGinty became a party to this action by a third-party complaint by Churchill Downs for indemnity and contribution. Blue Cross Blue Shield of Texas has filed a derivative Employee Retirement Income Security Act (ERISA) subrogation and recovery claim against Appellees.

## STANDARD OF REVIEW

A motion for summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR[3] 56.03. "Because no factual issues are involved and only a legal issue is before the court on the motion for summary judgment, we do not defer to the trial court and our review is *de novo*." *Univ. of Louisville v. Sharp*, 416 S.W.3d 313, 315 (Ky. App. 2013) (citation omitted). In negligence cases, while duty is an issue of law, "[b]reach and injury, are questions of fact for the jury to decide." *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 89 (Ky. 2003) (citation omitted). With these standards in mind, we turn to the applicable law and the facts of the present case.

## ANALYSIS

Both summary judgments at issue here were issued mere months before the rendition of *Keeneland Association, Inc. v. Prather*, 627 S.W.3d 878 (Ky. 2021). Therefore, the parties and the circuit court were without the benefit of its guidance. *Prather* is highly instructive of the present issues, and is summarized as follows:

---

[3] Kentucky Rules of Civil Procedure.

During the 2016 September Yearling Sale at Keeneland, a horse broke loose from its handler and headed toward pedestrians who were crossing a path between barns. One pedestrian, Roy J. Prather, fell while attempting to flee and fractured his shoulder. Prather and his wife, Nancy Prather, filed suit in Fayette Circuit Court alleging various negligence claims against Keeneland and Sallee Horse Vans, Inc., the transportation company that agreed with the horse's purchaser to transport it to its destination. Keeneland Sallee argued that the Prathers' claims were barred by Kentucky Revised Statute (KRS) 247.402, a provision of the Farm Animals Activity Act (FAAA) that limits the liability of farm animal activity sponsors and other persons as to claims for injuries that occur while engaged in farm animal activity.

Finding the FAAA applicable, the trial court granted summary judgment in favor of Keeneland and Sallee. On appeal, the Court of Appeals raised a new legal theory *sua sponte* and reversed the trial court's decision. Noting that in a separate statute the legislature recognized the sale of race horses as integral to horse racing activities and that horse racing activities are specifically exempted from the FAAA, the appellate court concluded the trial court erroneously dismissed the Prathers' claims.

*Id*. at 880. Of specific importance is *Prather*'s application of the "horse racing activities" exemption under KRS 247.4025 (hereafter referred to as the Exemption). Pursuant to the provision, the protections otherwise afforded property owners and others under the FAAA do not apply if the injury resulted from "horse racing activities," which is defined as "the conduct of horse racing activities within

-4-

the confines of any horse racing facility licensed and regulated by KRS 230.070 to 230.990, but shall not include harness racing at county fairs[.]" KRS 247.4015.

The Court in *Prather* ultimately concluded that the Exemption was inapplicable under the facts. In so holding, the Court provided a thorough analysis of the FAAA, its legislative history, and its application – which is very fact specific. *Prather*, 627 S.W.3d at 886. Accordingly, we granted oral argument in the present case in order to more closely address the unique facts at issue here, and for the parties to have an opportunity to address *Prather*. For the following reasons, we reverse the circuit court and remand.

We need not saddle this Opinion with unnecessary legal baggage. It is undisputed that if the Exemption does not apply here, then Appellees would be relieved from liability pursuant to the affirmative provisions of the FAAA. Therefore, our primary concern is the applicability of the Exemption. To reiterate for purposes of clarity:

> KRS 247.401 to 247.4029 shall not apply to farm animal activity sponsors, farm animal activity professionals, persons, or participants when engaged in **horse racing activities**.

KRS 247.4025(1) (emphasis added); and

> **"Horse racing activities" means the conduct of horse racing activities** within the confines of any horse racing facility licensed and regulated by KRS 230.070 to 230.990, but shall not include harness racing at county fairs . . . .

KRS 247.4015(8) (emphasis added).  Clearly, the General Assembly has provided a very broad, if not redundant, definition.  And its plain language appears to encompass the activity at issue in the present case.  However, as the Court discussed in *Prather*, this is not an unbridled Exemption:

> Nothing in the record supports a conclusion that Keeneland, Sallee or Prather were engaged in the "conduct of horse racing activities" under any reasonable meaning of the phrase.  The only activities occurring on the Keeneland premises were the transport of horses, by hand, to and from the backside, sales arena, and transport vans where the horses were loaded and taken off the premises after being purchased.  No live racing was occurring, Keeneland's racing meets being confined to April and October of each year.  Horse sales and horse racing are entirely different activities and the FAAA treats them as such.  While the Court of Appeals' classification of Keeneland as a horse racing facility is proper, Keeneland was not operating as a horse racing facility during the September Yearling Sale.  Therefore, the blanket exemption of horse racing activity from the FAAA in KRS 247.4025(1) is inapplicable.

*Prather*, 627 S.W.3d at 886.

Accordingly, the Exemption and *Prather* are the twin spires framing our analysis.  Yet, these beacons are far from narrow.  For the following three reasons, we believe that the undisputed underlying activity in the present case is distinguishable from the horse sales in *Prather* and is therefore covered by the

-6-

Exemption:  1) It was Derby Day at Churchill Downs.  Indeed, live racing was occurring; 2) Roby was injured after being bit by a horse located on the premises; 3) that horse, or more precisely, a "stable pony," was a ten-year-old non-racing thoroughbred employed for the purpose of escorting racehorses to and from the track in order to keep them calm and under control.  If such events are not considered the "conduct of horse racing activities," it begs the question of what does?  Indeed, a wide girth of conduct and accompanying injuries would be rendered unactionable if this Court were to unilaterally limit an otherwise broad legislative Exemption.  For example, the class of persons with the highest likelihood of injury are a small cadre who assume an immense risk – *i.e.*, jockeys.  A distant second are employees involved in the handling of horses.  Unless otherwise exempted as agricultural employees, their remedy would likely be a workers' compensation claim.  *See* KRS 342.650; and RONALD W. EADES, 18 KY. PRAC., WORKERS' COMP. § 3:2 (2021).  That leaves everyone else.  If the only actionable injuries remaining are those that occur during, and as a direct result of the "the fastest two minutes in sports," the class of potential plaintiffs would be *de minimis*.[4]

---

[4] We are cognizant that the Exemption is not limited to the Derby or even injuries caused by horses.  The examples provided herein are merely instructive and not dispositive of future cases.

In that same vein, the circuit court determined that the Exemption does not apply since the "stabling of horses" is included in the definition of farm animal activities under KRS 247.4015(3) and (5) and, therefore, the FAAA operates to bar Roby's claim. This is incorrect. Applying the circuit court's logic, anything included under the definition of farm animal activity in KRS 247.4015(3) cannot also be horse racing activity, which would render the Exemption meaningless. The Exemption negates what is otherwise provided in KRS 247.401 to 247.4029. Since KRS 247.4015(3) falls within KRS 247.401 to 247.4029, the Exemption applies to that section. Whatever the legislature intended here, it certainly did not intend a toothless law. If a narrower Exemption is to exist, then the General Assembly or our Supreme Court may so instruct.

However, our analysis does not end here. Having determined that liability is not foreclosed under the FAAA, we must now consider the common law of premises liability. In the present case the circuit court further determined that Roby was a licensee, not an invitee. The duty owed a licensee is to "not knowingly let her come upon a hidden peril or willfully or wantonly cause her harm." *Smith v. Smith*, 563 S.W.3d 14, 17 (Ky. 2018) (citation, footnote, and brackets omitted). Therein, a divided Court reaffirmed that "Kentucky law remains steadfast in its adherence to the traditional notion that duty is associated

with the status of the injured party as an invitee, licensee, or trespasser." The

Court ultimately reversed and remanded determining that:

> a dispute exists as to whether [plaintiff] was a licensee or
> an invitee. [Defendant] argues that [plaintiff] came over
> to her house on her own accord. [Plaintiff] argues that
> she was invited over to babysit her great-granddaughter,
> albeit gratuitously. This Court has previously held that a
> family member invited to assist another whether
> gratuitously or on a monetary basis was an invitee.

*Id*. at 18 (internal quotation marks and citations omitted). In a more recent and

unanimous decision, however, the Court clarified the relevant law as follows:

> Distinguishing guests as either licensees or invitees has
> proven particularly challenging for the court because the
> mutuality of benefit between a property owner and a
> guest required for an invitee is difficult to demonstrate in
> the context of a social visit. Because the benefit received
> by a property owner in hosting a guest is not easily
> quantified in the way an economic or business profit is
> measured, the distinction created by mutuality of benefit
> is not useful in distinguishing a licensee from an invitee
> in a social context. The result of this difference in
> relational dynamics leads to unpredictability for both
> property owners and entrants and often leads to
> inequitable results.
>
>  . . . .
>
> The determination of the existence of a duty is still
> a legal question for the court to determine. But **the court
> need only consider 1) if the property owner invited or
> ratified the presence of the guest on the premises, and
> 2) if the guest was injured or harmed in the course of
> or as a result of an activity taking place on the
> premises. If both requirements are met, the property**

-9-

> **owner owes a duty of reasonable care to the guest as a matter of law.**

*Bramlett v. Ryan*, 635 S.W.3d 831, 837, 839 (Ky. 2021), *reh'g denied* (Dec. 16, 2021) (emphasis added).[5]

For the following three reasons, we believe that Churchill Downs owed Roby a duty of reasonable care: 1) Roby and her husband were invited by McGinty to enter property owned and controlled by Churchill Downs; 2) they entered the property through a rear gate; and 3) upon entry, McGinty was required by the grounds staff to present an owner's identification badge and to escort Roby and her husband onto the property as guests. Therefore, because Churchill Downs staffed the entrances, provided a credential identification/guest system of entry, and was aware that guests were on the property, it ratified Roby's presence on the premises. The absence of such a finding would compel a conclusion that Roby was a trespasser, which is entirely unsupported by the record or the parties here.

As to the second prong of our analysis, *Bramlett* provided the following examples:

> Although this Court's opinion in *Hardin* [*v. Harris*, 507
> S.W.2d 172 (Ky. 1974)] did not expressly define what
> constitutes an activity for the purposes of this rule, the
> Court's use of broad language – "activities conducted on
> the premises" – has been properly interpreted by both this

---

[5] Like *Prather*, both summary judgments at issue here were issued mere months before the rendition of *Bramlett*. Therefore, the parties and the circuit court were without the initial benefit of its guidance. However, the parties were permitted to address both cases at oral argument.

Court and the Court of Appeals to encompass a wide
range of possible circumstances, including children
swimming in a pool, *Grimes v. Hettinger*, 566 S.W.2d
769 (Ky. 1978), adults swimming in a pool, *Scifres v.
Kraft*, 916 S.W.2d 779 (Ky. App. 1996), riding ATVs,
*Mathis v. Lohden*, No. 2007-CA-00824-MR, 2008 WL
399814 (Ky. App. Feb. 15, 2008), and driving people in a
car, *Helton v. Montgomery*, 595 S.W.2d 257 (Ky. App.
1980).

*Id*. at 839 n.32. The scope of activities occurring at Churchill Downs on Derby

Day is self-evident. Even if Roby's presence was limited to touring the stables,

this certainly constitutes "an activity taking place on the premises." *Id*. at 839.

Lastly, but significantly, Bradley owned and controlled the horse that

bit Roby. Accordingly, *Bramlett*, *et al.*, are not dispositive here because Bradley's

potential liability need not be viewed as a premises issue. Because it is undisputed

that Bradley was aware that guests were permitted in the stable area and that he

owned and controlled the personal property that caused the underlying injury,

ordinary negligence principles apply. Therefore, both Churchill and Bradley owed

Roby a duty of reasonable care. Accordingly, "[w]ith the scope of the [Appellees']

duty determined, the determination of breach of such duty should be left to the

discretion of the jury." *Bramlett*, 635 S.W.3d at 839. We have also considered

Roby's argument pursuant to Chapter 91 of the Louisville Metro Ordinances, and

find it to be unconvincing. Resolution of the present case is confined to the

statutory and case law addressed herein.

-11-

## CONCLUSION

For the foregoing reasons, we REVERSE the circuit court's summary judgments, and REMAND this case for trial.

LAMBERT, JUDGE, CONCURS.

CETRULO, JUDGE, CONCURS IN RESULT AND FILES SEPARATE OPINION.

CETRULO, JUDGE, CONCURRING IN RESULT: Respectfully, I concur in result. The majority Opinion primarily relies upon two decisions rendered by the Supreme Court since the trial court issued the ruling on appeal. In *Prather*, 627 S.W.3d 878, the Court provided a thorough analysis of the FAAA and, based upon that analysis, the majority found that the Exemption applies and liability was not foreclosed under the FAAA. With that portion of the Opinion, I agree and would remand the matter to the trial court in keeping with the holding in *Prather*.

However, *Prather* also stands for the principle that while "[d]esigned to be narrow and exacting so as to preserve one's right to trial by jury, summary judgment is nevertheless appropriate in cases where the nonmoving party relies on little more than 'speculation and supposition' to support his claims." *Id*. at 890.

In reviewing the record and the orders below, it is abundantly clear (and the parties agree to this), that the trial court's summary judgment was primarily based upon general premises liability law. The lower court opinion

-12-

found that the plaintiff was a licensee and not an invitee because she was not there to benefit Churchill Downs. The trial court specifically found no breach of duty owed because the only duty owed to a licensee is to not knowingly let her come upon a hidden peril or wantonly cause her harm. Again, this ruling was before the Supreme Court decision in *Bramlett v. Ryan*, 635 S.W.3d 831, as the majority Opinion notes.

However, the facts seem to confirm that Bradley was only a licensee of Churchill Downs, and that Roby only had permission to enter the premises from the licensee. Likewise, it is undisputed that Roby approached the horse while it was in its stall and did so with full knowledge and experience with horses. Since the trial court did not have the benefit of the *Bramlett* opinion, when it rendered its ruling, I would simply remand for the trial court to examine the facts and for possible further proceedings consistent with that opinion.

BRIEF AND ORAL ARGUMENT
FOR APPELLANTS:

Larry D. Ashlock
Elizabethtown, Kentucky

BRIEF FOR APPELLEE
CHURCHILL DOWNS, INC.:

Katherine T. Watts
John F. Parker, Jr.
Louisville, Kentucky

BRIEF FOR APPELLEES WILLIAM
"BUFF" BRADLEY AND
BRADLEY STABLES:

Neil P. Baine
James P. Nolan, II
Louisville, Kentucky

ORAL ARGUMENT FOR
APPELLEE CHURCHILL DOWNS,
INC.:

Katherine T. Watts
Louisville, Kentucky

ORAL ARGUMENT FOR
APPELLEES WILLIAM "BUFF"
BRADLEY AND BRADLEY
STABLES:

Neil P. Baine
Louisville, Kentucky